## McCAIN v. PORTIS ET AL.

1. SALE: *Of fund in court.*
No one can sell a fund in court as a fund. He can make no delivery of it. He can sell only his interest when it may be adjusted; and all parties must contemplate that in the adjustment, the court will, before ordering it out, subject it to all claims upon it properly brought to the notice of the court in favor of any other parties, or in favor of any officer of the court rendering services concerning the subject matter.

2. ATTORNEY'S LIEN: *On fund in court.*
The purchaser of a fund in court during the pendency of the suit, purchases with notice of the attorney's lien upon the fund for his fee for services rendered in reference to it.

3. SAME: *Filing lien with clerk: Notice.*
It is not necessary for an attorney to file with the clerk his claim of lien on the judgment recovered, to protect him against the purchaser of the judgment.

APPEAL from *Jefferson* Circuit Court, in Chancery.
Hon. J. A. WILLIAMS, Circuit Judge.

*McCain & Crawford* for appellant.

Where a creditor has retained an attorney and brought suit, and pending the suit sells his claim to a third person without the attorney's knowledge, and such third person suffers the attorney to conduct the suit to judgment, and to secure money on the judgment through a receiver, the court will not permit such third person to withdraw the money without the attorney's fee. *33 Ark., 233; 13 Ark., 193; 36 Ark., Porter, Taylor & Co. v. Hansen.*

Our statute has made no change affecting this case.

EAKIN, J. A suit under the style of "Merchants & Planters Bank v. J. Simon et al." was pending in the Jefferson Circuit Court, in chancery. It involved con-

flicting claims under liens and purchases, to a large · quantity of real estate, asserted by different parties. The object of the suit, taken with the cross-bills, was to adjust them, and eliminate the rights of each. J. C. Meyer had been allowed to come in as a defendant, to answer the bill, and set up his claim by cross-bill. McCain, the appellant here, was his attorney. The suit was prosecuted to a decree, in which, amongst other things, the right of J. C. Meyer was established to an interest in the property to a considerable amount, over $2,000. The property had been put in the hands of a receiver, who had a considerable amount of money subject to distribution under order of the court, to a part of which J. C. Meyer under the decree was entitled.

Upon a motion subsequently made for distribution, made by one of the parties interested, McCain, by written motion applied to be allowed out of the part of the fund which under the decree would be coming to Meyer, a reasonable attorney's fee, and that so much be paid to him in the distribution. He claimed that $150 would be a reasonable fee, and that he had already received one-half, leaving properly due to him the sum of seventy-five dollars. The court refused the motion and he appeals.

The record discloses by statement of facts made matter of record, in nature of bill of exceptions, that the claim was resisted by Mattie B. Portis, and other parties to the suit; that McCain had appeared in the suit as solicitor for J. C. Meyer, and had prosecuted the claim of Meyer to a valuable decree in his favor, which entitled Meyer to a part of the fund ; that after he had filed Meyer's cross-bill, and before the decree, Meyer, upon a settlement out of court with Mattie B. Portis, had conveyed to her all his interest in a part of the property in question, which he had bought under a certain execution against W. N. Portis, in

favor of Talbott & Packard, and a half interest in all the property which had been sold to Portis & Bro. The consideration was $1,300, which was expressed to be in full of all the claims of the Talbott and Packard judgment against said W. N. Portis. There were other stipulations in the agreement not affecting this question, but nothing was said of the solicitor's fee. The amount was admitted to be reasonable on one hand, and upon McCain's part the payment of one-half was admitted. It was made by those interested in the other half interest of the property. Mattie B. and those interested with her, had then no actual notice of the claim for a fee, or its amount. The first and only lien ever filed was the claim put in on the motion for distribution. The half interest claimed by Mattie B. was of property in the hands of the receiver, who had in his hands from rents enough to pay the claimant. There was nothing to show on McCain's part any knowledge of, or assent to the agreement between Meyer and Mattie B.

There is a dictum of this court, in the opinion delivered in the case of *Porter, Taylor & Co. v. Hansen et al., 36 Ark., 604*, to the effect that both by statute, and upon general principles of equity practice, the attorneys have a lien for compensation upon a fund in court recovered by their services.

1. Sale of fund in court. That case, however, was decided upon our statute, as, indeed, we think this may be. The cases are very similar. Here was a case in which valuable real estate had been taken into the possession of the court, and was held and managed by its officer, for the benefit of whom it might concern of the parties, original or admitted, and which

2. Attorney's lien on fund in court. was producing rents *pendente lite*. A party claiming an interest in the property and its proceeds, employs an attorney, who has his client admitted as a party, and put in position to claim. He then prosecutes his client's claim to

recognition by decree, and, upon asking that his reasonable fee be allowed out of the products of his professional skill and faithful work, is met by the claim of another party to the suit, who has purchased his client's interest *pendente lite* without the solicitor's knowledge or assent. It is obvious that no one can sell a fund in court as a fund. It is not in the control of any vendor. There can be no delivery of the thing itself. One can only transfer an equitable right to his net interest in the fund when that may be adjusted; and in the adjusment all parties must contemplate that the court will, before ordering it out, subject it to all claims upon it, properly brought to the notice of the court, in favor of any other parties, or in favor of any officer of the court rendering services concerning the subject matter. It is like one partner selling his interest in a particular asset, whether it be an article of property, or a debt due the firm. He can not convey to any one a right in the substance, to one half to be plucked out clean; but only a resultant interest, after settlement of partnership affairs. The question here is whether under our system a solicitor's fee in chancery, properly claimed and brought to the notice of the court, is to be taken into the account in making the adjustment of the net interest of the party vendor. If the Chancellor may do that, then parties purchasing such interests *pendente lite*, buy in contemplation of that, and take only that net interest so diminished.

Confining our view to the power and duty of the Chancellor, in disposing of a fund in court, and leaving out of view the numerous phases of an attorney's lien in suit at law, let us first examine the English equity practice which has been adopted in this State from a very early period of our territorial history, and which remains in force, with very slight statutory alterations, except in so far as the

somewhat slightly different organization of our courts requires its modification.

In the case of *Turwin v. Gibson, 3 Atk.*, *720*, Wade had been solicitor in a cause for Arthur Harding, and had obtained a decree for his client, for a sum which seems to have been, some way, under the control of the court. Although the report is meagre, Harding died leaving bond debts, which, if Wade had no lien, would, in the course of administration, have taken precedence of Wade's claim for compensation. His widow petitioned the court that the sum should be paid to her, as her husband's representative. Lord Hardwicke denied the petition, saying, "a solicitor, in consideration of his trouble and the money he disburses for his client, has a right to be paid out of the duty decreed for the plaintiff, and a *lien upon it,* before the bond creditors of the deceased plaintiff;" and he adds " it is *constantly the rule of this court.*" The Reporter says that the Lord Chancellor had laid down the same rule upon another petition a short time before. Again, in the case of *Ex Parte Price, 2 Vesey, sen.*, Lord Hardwicke held that a solicitor who had rendered services in taking out a commission of lunacy, was not bound to look for payment to the effects of the person who took out the commission, and who was bankrupt, but might be allowed out of the lunatic's fund, saying, " solicitors have this equity allowed to them, to be entitled to a satisfaction out of the fund for their expenses, whether it was in the way of *suit,* or prosecution in lunacy or bankruptcy."

In *Skinner v. Sweet, 3 Mad.*, *245*, Vice Chancellor Leach held that a woman's solicitor had a lien on the proceeds of her annuity which had come under the control of the court in the case.

In *Lann v. Charde, 4 Mad.*, *391*, the same Vice Chancellor held directly that a solicitor had a lien for his costs

in the cause upon a sum of money which had been decreed to his client.

This was conceded, indeed, by the opposing counsel, who only contended that the lien was not general for costs in other suits.

Also in point is the decision of the same Vice Chancellor in the case of *Ex Parte Moule, in re Dark, 5 Mad., 463,* in which he says: "The lien of the solicitor upon the fund in the court *which is the result of the proceedings,* can not be defeated by the insolvency of the client. The assignees of the insolvent can only take his property subject to the claims by which it was affected as against him."

Where there is a fund in court in a chancery case, I have found no single English authority in conflict with this down to the act of 23 and 29 Victoria, which was a statute like ours, of a remedial nature, more accurately to define and prescribe the liens of attorneys and solicitors. It has been, nevertheless, held that a solicitor's lien for costs upon a *fund in court* recovered by his exertions, is independent of the statute, and that he has priority over a judgment creditor of his client, who had obtained an order charging it. There can be no doubt of the English practice.

I can not conceive that it makes any difference in principle, that under the English system the fees of solicitors in chancery, like those of attorneys at law, were subject to taxation by the court. That has never been our practice, since we leave the amounts of compensation to be determined between solicitor and client. Courts of chancery, however, before awarding a fund in court, exercises the authority of inquiring if the fee be reasonable, and the equity to allow it must be the same as if it were taxed under the English system.

The case of *Jones v. Frost, L. R., 7 Chancery Appeals* (*S. C., 3 Moak's Eng. Rep., 622*), was under the act of Vic-

toria to enforce a lien on property recovered, and, although
not in point upon the question being considered, is appli-
cable to the question of notice, which also arises in this
case; it being urged in behalf of the appellee, Mattie B.
that when she bought the interest of Meyer, she knew
nothing of McCain's claim.   She can not say that, pur-
chasing a fund in court *pendente lite*.   In the case last cited
the court says, concerning the purchaser of the property
resisting the lien, "he knew  there was a pending suit
and that cost must have been incurred in it, and he ought
to have inquired *if the solicitor had been paid*.  At all events,
the purchaser ought not to stand in the way of the solici-
tor's right to a charge."   This may be well said of Mrs.
Portis.   She ought not to have taken and enjoyed the
fruits of McCain's labor without inquiring if he had been
satisfied; or, at least, having taken the assignment of Mey-
er's interest, she ought not to stand in the way of the
charge.

Our statute is remedial on the subject of attorney's liens,
and cumulative.   It does not affect the right to a lien
under the old principles; if, indeed, it does not actually,
by its own force, give McCain a lien in this case, indepen-
dent of the former practice in equity, and considered
merely as a decree for money, not already in court.   It
provides that an attorney shall have a lien on any judg-
ment recovered in a court of record.   (*Gantt's Digest, sec.
3622.*)   It provides, however, that such lien for services
should not prevail against any one who in good faith, and
without notice of the lien, has made payments to the per-
son in whose favor such judgment was rendered, upon or
in consequence of such judgment, unless the attorney shall
have, within ten days after the rendition of the judgment,
filed with the clerk a written statement setting forth his
claim to a lien.   *Ib., secs. 3625, 3676.*

McCain v. Portis et al.

This was for the protection of those bound to pay the judgment, either legally, or at least by some obligation of interest which would make it in some sense a duty. It could not apply to a mere purchaser. For purchase money can not be said to be paid " upon or in consequence of " the judgment. The case shows no obligation on Mrs. Portis to pay the decree in favor of Meyer, nor any interest the protection of which would impel her to pay it. Perhaps, being a party to the suit, she may have had other interests in the property, but they are not disclosed. And it would make no difference if she had. The decree was not rendered when she bought. The whole matter was *lis pendens*, and she was one of the litigants. She may, as matter of fact, be presumed to have known that some attorney was prosecuting for Meyer an interest which was so valuable that, even before it was decided, she considered worth over a thousand dollars. What she paid was purchase money of a claim in litigation. It was not paid on or in consequence of a decree. Her case does not come within the statute.

The Chancellor should have allowed the claim to be paid out of the portion of the fund allotted to Meyer, whom Mrs. Portis represented. McCain is not bound to take any notice of the equities between her and her vendor as to which shall exonerate the other, or whether they will contribute.

Reverse the order refusing the allowance, with directions to allow the same, and for such other proceedings in the cause as may be consistent with this opinion and the principles and practice in equity.