IN THE

# SUPREME COURT OF NEBRASKA.

### JULY TERM, 1885.

PRESENT:

Hon. AMASA COBB, Chief Justice.
" SAMUEL MAXWELL, } Judges.
" M. B. REESE,

DAVID E. SAYRE ET AL., APPELLEES, V. WILLIAM H. THOMPSON ET AL., APPELLANTS.

1. **Creditor's Bill: PETITION.** Where after judgment and before the issuance of execution thereon, the defendant removed to another county, and the plaintiffs issued an execution to the original county, which was returned wholly unsatisfied for want of goods or lands, upon a creditor's bill being brought to subject a certain other judgment to the payment of said first named judgment, on the ground that said last named judgment was held in secret trust for the debtor in said first named judgment, and said bill contained an averment "that the said defendant, William H. Thompson, has no property whatever subject to sale on execution," *Held*, Sufficient.

2. ———: **DEFENSE: ESTOPPEL.** W. H. T., a merchant, being indebted to S., sold his entire stock to L., taking time notes in payment, and afterwards, upon a colorable sale thereof, transferred said notes to B. S. brought suit against W. H. T., and attached the goods in the hands of L., claiming that the sale from W. H. T. to L. was fraudulent and void. L. replevied

3

the goods. Afterwards, S. abandoned his attachment, and by stipulation released all claim for a return of the goods. B., having sued L. on the notes and obtained judgment, S. brought a creditor's suit against B. and others to have the judgment of B. against L. applied to the payment of his judgment. *Held,* That B. is estopped to set up and claim as a defense to such suit that S. obtained satisfaction of his debt by means of his attachment of the said goods.

3.  ——: ATTORNEYS' LIEN. S. and P., the attorneys who obtained the judgment for B. against L., having been made defendants in said creditor's suit for the purpose of cutting off their lien on said judgment for their fees, *Held,* That no question of notice of such attorneys' claim of lien could arise in said case, and that if such question could arise, that actual notice is sufficient under the statute.

APPEAL from the district court of York county. Heard below before NORVAL, J.

*Sedgwick & Power,* for appellants.

*Brown & Ryan Brothers,* for appellees.

COBB, CH. J.

This is an action in the nature of a creditor's bill, brought by certain judgment creditors of William H. Thompson against said Thompson, together with W. A. Brown, Samuel H. Sedgwick, and Frederick C. Power, for the purpose of subjecting a certain judgment at law recovered in the district court of York county by the said W. A. Brown against one James Lemon to the payment of the judgments of the said plaintiffs against Thompson.

Plaintiffs, by their petition, after setting out their several judgments against Thompson, the issuing of executions thereon respectively, and their return wholly unsatisfied, and the insolvency of Thompson, proceed to charge as follows: "That for some years prior to the 26th day of April, 1880, the defendant William H. Thompson was engaged in keeping a store of general merchandise in the

said city of York, Nebraska, carrying on the business of a general merchant at said place, and that the claims for which the said several judgments    *    *    *    were rendered were for goods purchased by the said Thompson on credit and for money used in his said business * * * that the said Thompson being considerably indebted, for the purpose of cheating and defrauding his creditors and for the purpose of placing his goods and property beyond the reach of his creditors    *    *    *    and particularly the plaintiffs, did, on the 26th day of April, 1880, pretend to sell and did deliver to one James Lemon all his goods merchandise, book accounts, and property subject to execution or legal process, for the consideration of six thousand dollars, five hundred dollars of which was paid at the time of said pretended sale, and for the balance of five thousand five hundred dollars the said Thompson took the unsecured notes of the said Lemon, payable as follows: Five hundred dollars payable in sixty days after the date of the sale, and five hundred dollars every two months thereafter, thus extending the time for the payment of said notes over the period of twenty-two months, all of which was done by the said Thompson with the view and for the purpose of cheating and defrauding his creditors and particularly these plaintiffs.

    *    *    *    " That the said defendant Thompson, for the purpose of hindering and defrauding his creditors in the collection of their just claims, and particularly the plaintiffs, did send and remove the aforesaid notes of the said James Lemon out of the state of Nebraska, and beyond the jurisdiction of the courts of this state, and secreted said notes that they might not be made subject to the payment of the debts due his creditors, and especially these plaintiffs, whereby these plaintiffs and each of them were wholly unable to come at the same or any part of them.

    *    *    *    "That on the 10th day of July, 1882, ten of the said notes were sued by W. A. Brown in the district

court of York county, as the owner of the same, and judg-
ment was rendered by said court in favor of W. A. Brown,
against James Lemon, on the 18th day of September, 1883,
for the sum of six thousand eight hundred and seventeen
dollars and eighty three-cents, which said judgment is still
wholly unsatisfied and of record appears to be the property
of the said W. A. Brown. The plaintiffs allege that the
assignment under which the said defendant W. A. Brown
claims to be the owner of, and as such sued upon, said
notes, was fraudulent and colorable only, and was made by
said Thompson and received by said Brown with that in-
tent, and for no other purpose, and as part of the scheme
of said Thompson to cheat, hinder, and delay the creditors
of the said defendant Thompson in the collection of their
just claims, and especially to hinder and defraud these
plaintiffs.

  *   *   *  " That said assignment was without considera-
tion, and was made solely for the purpose of placing said
notes and the avails thereof beyond the reach of the cred-
itors of the said Thompson, and particularly of these plain-
tiffs. And the said defendant W. A. Brown has no equit-
able right to or interest in the same, but that he holds
them for the use and benefit of the said defendant Thomp-
son," etc., with the usual allegations of conspiracy and con-
federation against the defendants Thompson and Brown.

  The plaintiffs, in and by their said petition, also allege
that the defendants S edgwick & Power, as attorneys,
brought the action for the said defendant W. A. Brown
on the notes given by Lemon as heretofore stated, and ob-
tained judgment on the same as in said petition before
stated, and for such services said Sedgwick & Power have
pretended to file an attorney's lien on said judgment for
the sum of one thousand dollars, as the alleged value of
their services in obtaining the said judgment against
Lemon, as aforesaid, which said sum of one thousand dol-
lars the plaintiffs allege is greatly in excess of the value of

said services, even if the said Sedgwick & Power are entitled to a lien on said judgment for said services, etc., with prayer for injunction and relief, etc. And also "that the court inquire and ascertain whether the said Sedgwick & Power are entitled to a lien on said judgment for their services, and if such lien shall be allowed an enquiry be had as to what said services were reasonably worth," etc., with prayer for general relief.

Each of the defendants, except Thompson, answered, and replications being made thereto, the pleadings present the several questions hereinafter stated.

A trial was had to the court, a jury being waived. The court found all the allegations of the plaintiffs' petition to be true excepting as to the lien of Sedgwick & Power. And further found in favor of the defendants Sedgwick & Power, in respect to their said lien, that their services as such attorneys in prosecuting said notes to judgment were rendered in good faith, were of the value of seven hundred and fifty dollars, that no part thereof has been paid, that a written notice of such lien was duly filed, of which the said James Lemon and each of the plaintiffs had actual notice.

A final judgment was entered in accordance with the said findings, from which the cause is brought to this court on two appeals.

The appeal of W. A. Brown, defendant, presents the following points:

1. Are plaintiffs entitled to relief by creditor's bill before the issuance of an execution against their debtor directed to the sheriff of the county in which he resided at the time of its issuance, and its return unsatisfied in whole or in part?

2. Are the plaintiffs entitled to proceed by creditor's bill after having caused to be levied upon and seized by the sheriff of the county, upon executions issued by them against their judgment debtor, sufficient goods and chat-

tels to satisfy their said judgments as the property of said judgment debtor, and upon the same being replevied by one James Lemon, having by stipulation released and surrendered all claim thereto and of a return thereof?

3. The finding of the court that, "Afterwards said Thompson transferred said notes so taken to his co-defendant, W. A. Brown, in whose name suit was brought on ten of said notes, against said James Lemon, and judgment thereon recorded therein in this court on the 18th day of September, 1883, for the sum of $6,817$\frac{83}{100}$ and costs; that said judgment is wholly unsatisfied, that the said purchase of the said notes by Brown from the said Thompson, and recovery of judgment, was a part of the fraudulent scheme and device of the said Thompson and the said Brown to hinder, defraud, and delay the creditors of the said Thompson, especially the plaintiffs, in the collection of their just debts and judgments due from the said Thompson, and that therefore the said W. A. Brown is the equitable trustee of the plaintiffs as to their above named judgments," etc., is not sustained by the evidence, and that the judgment is not sustained by the evidence.

Upon the first point, the Nebraska cases cited by counsel for defendants fall short of sustaining their position. The case of *Weil & Cahn v. Lankins*, 3 Neb., 384, decided but a single point, to-wit: "That an attaching creditor cannot maintain an action in the nature of a creditor's bill to have an alleged fraudulent conveyance from his debtor set aside, such action can only be maintained by a judgment creditor." The other two cases cited—*Weinland v. Cochran*, 9 Neb., 482; *Crowell v. Horacek*, 12 Id., 622— simply follow this and go no further.

The case of *Reed v. Wheaton*, 7 Paige's Chan., 663, goes further, and holds that "where a creditor's bill is founded upon a judgment in the supreme court or a decree of the court of chancery, so that an execution thereon may be issued to any county, the complainant must show affirm-

atively in his bill that he has exhausted his remedy by issuing an execution to the county in which the defendant resided at the time when such execution was issued, or he must state in his bill some sufficient legal excuse for issuing his execution to a different county."

In that case it appeared from the pleadings that the defendant, who had formerly resided in Genesee county, where the judgment was rendered, had at the time of the issuance of the execution to the sheriff of Genesee removed across the line into Niagara county, and then lived at a place in the latter county about ten miles from his former residence, "and that if an execution had been issued to that county it could have been levied upon personal property, which he had there and which was subject to sale on execution, sufficient to have satisfied the debt and costs."

This case is followed by that of *Mer. and Mechanics Bank v. Griffith*, 10 Paige, 519; also, by *Wheeler v. Heenman*, 3 Sand. Ch'y, 650, and *Smith v. Fitch*, Clarke's Ch'y, 183.

In the former of these cases the court queries, "Whether a positive averment in the bill that the defendant has no real or personal estate whatever in the county where he resides, which is liable to a levy and sale by execution, would be a sufficient legal excuse to authorize the filing of a creditor's bill upon the return of an execution issued to another county."

This query, I think, should be answered in the affirmative. Such an averment would present an issue which the plaintiff would be bound to prove, and upon its proof the necessary fact, and the only one which the return of an execution issued to the proper county would tend to prove, would be established before the court.

In the case at bar the petition contains the following allegation: " That the said defendant, William H. Thompson, has no property whatever subject to sale on execution." This allegation is not denied by any of the defend-

ants and must therefore be taken to be true, and while it is not as full as it might and should have been, it will in view of the other facts admitted and proved in the case be held sufficient.

Upon the second point it appears from the answer of defendant Brown, and reply of plaintiffs thereto, that upon the commencement of the several original actions against the defendant Thompson by the respective plaintiffs therein, writs of attachment were issued in each of such cases, and goods attached thereon sufficient to satisfy each of said claims. Said goods were afterwards replevied by Lemon, who claimed the same under a sale to him by defendant Thompson. The several plaintiffs in said actions—joint plaintiffs in the case at bar—finally yielded to this claim of Lemon and submitted to the replevin suit.

I think that the most that can be claimed for this part of the proceeding is, that the plaintiffs thereby ratified the sale from Thompson to Lemon. Brown, by bringing suit and recovering judgment against Lemon on the notes given by him to Thompson upon said sale, also ratified the said sale, and is estopped to deny the ownership of Lemon in said goods, or to predicate any defense upon the fact of plaintiffs' recognition of such ownership. I therefore deem it unnecessary to discuss or decide upon the question of law raised by counsel for defendant on this point.

The third point attacks the findings of the district court on the merits of the case. The defendant W. A. Brown claims to be a *bona fide* purchaser of the Lemon notes for their full value without notice of any infirmity or defense, and in his deposition taken to be used on the trial in his suit against Lemon on the said notes, which deposition was also introduced and admitted as evidence on the trial of the case at bar, he testified that he bought the notes, ten in number, calling for five hundred dollars each, from W. H. Thompson, on or about the first day of January, 1881; that he paid $2,250 down on the said purchase, and gave

Thompson his own notes, to-wit: Four notes for four hundred dollars each and one for two hundred and fifty dollars. That the money which he paid down he had had for a long time; that a part of it, over one thousand dollars of it, he brought with him from Iowa when he came to this state. That he took the money which he paid Thompson, at the time he paid him, out of a trunk in which he had always kept it. That the trunk was kept in the store-room at the railroad depot. That his business was that of telegraph repairer on monthly wages. That his wages averaged $70 per month.

There was a large amount of testimony taken and introduced on the part of the plaintiffs, mostly in the form of depositions of witnesses residing in the state of Iowa, at and near the place of the former residence of the defendant Brown, as to his business, property, and means while he resided there, and at the time of his departure for this state. It is not deemed necessary to quote any of this testimony, but only to say that upon careful examination of it I think it amply sufficient, in a case of fraud, to call upon the said defendant to show by evidence other than his own that he possessed the money which he claims thus to have parted with, and to explain the scource from which it was derived more explicitly than he has done. He also stated in his deposition above referred to, that after paying Thompson the $2,250 at the time of the purchase of the notes, he had a large amount of money—over fifteen hundred dollars left. It appears from the deposition of the father-in-law of Brown, and he is substantially corroborated by a dozen or more of his neighbors, that Brown left Iowa for Nebraska in the fall of 1879, and at that time he was absolutely without money, property, or means of any kind, and that for the following two years he had supported his family, consisting of a wife and two children, who remained in Iowa. It seems to me that if he in fact acquired the sum of four thousand dollars, over and above his personal expenses and

what he contributed to the support of his family, within the time intervening between the time of his leaving his home in Iowa and the date of the alleged purchase of the notes in question, he would be able to show from what source and in what manner he acquired it; and I think there was sufficient evidence against him to cast upon him the burden of making such showing. And in the absence of any evidence on his part tending to support his own claim of possessing the money which he claims to have paid for the notes, I think the evidence on the part of the plaintiffs sufficient to sustain the findings of the court.

The appeal of the plaintiffs raises the question of the finding of the district court in favor of the defendants Sedgwick & Power sustaining their claim to a lien upon the judgment against Lemon for the amount of seven hundred and fifty dollars, their fees in the case in which said judgment was rendered. The plaintiffs, by their petition, question the amount due the said Sedgwick & Power for their services and disbursements in obtaining the said judgment, but do not directly deny their right to a lien for whatever such services and disbursements were really worth. Plaintiffs, in their reply to the answer of Sedgwick & Powers, " say that the attorneys, Sedgwick & Power, were not entitled to have and enforce an attorney's lien against said judgment for their services in recovering the same, for the said attorneys have never served upon James Lemon, the judgment defendant, a notice of said claim of a lien," etc.

Our statute provides, Comp. Stat., Ch. 7, Sec. 8 : " An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment, upon money in his hands belonging to his client, and in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party."

This I understand to be but a re-enactment of the common law.

Weeks, in his work on Attorneys at Law, p. 609, quotes Lord Mansfield as saying, in *Welsh v. Hole*, 1 Doug., 338 : "An attorney has a lien on the money recovered by his client for his bill of costs; if the money come to his hands he may retain the amount of his bill. He may stop it *in transitu* if he can lay hold of it. If he apply to the court they will prevent its being paid over until his demand is satisfied. I am inclined to go still further, and to hold that if the attorney gives notice to the defendant not to pay till his bill should be discharged, a payment by the defendant after such notice would be in his own wrong, and like paying a debt which has been assigned after notice."

I do not see how the question of notice could arise between attorney and client, but only between the attorney of the successful party to a suit or proceeding and the unsuccessful party, who is, by force of the judgment in such suit or proceeding, held to the payment of money, and then only where such party claims to have paid such money to some other party without notice of the lien of such attorney. If the question of notice could not have arisen between Brown and his attorneys as to their fees, I don't see how it can arise between them and the plaintiffs, who seek to be declared the *cestui que trust* of Brown as to the said judgment. Even if the question of notice does arise between them, they, as well as Lemon, have actual notice of the claim of defendants Sedgwick & Power, and that is all that is necessary to comply with the terms of the statute, as I understand it. As to the amount of the said lien or the value of the services of said Sedgwick & Power in prosecuting said notes to judgment, whatever might be the opinion of this court were the question presented to them originally, it cannot be questioned that the finding and judgment of the court on that branch of the case as well

as upon the other is amply sustained by the evidence. The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.

MAXWELL, J., concurs.

REESE, J., having been of counsel in a collateral proceeding, took no part in the decision.