Steve **ANDERSON** and Dianne Anderson, Plaintiffs,

v.

**FARMERS CO–OP ELEVATOR ASSOCIATION, INC.,** Defendant.

No. 7:CV93–627.

United States District Court, D. Nebraska.

Jan. 3, 1995.

James R. Welsh, Bradford, Coenen Law Firm, Omaha, NE, Glenn S. Pressman, Melat, Pressman Law Firm, Colorado Springs, CO, for plaintiffs.

Donald R. Witt, Baylor, Evnen Law Firm, Lincoln, NE, for defendant.

## MEMORANDUM AND ORDER

PIESTER, United States Magistrate Judge.

Pending before the court is defendant's motion to quash an attorney's lien. (Filing 28.) For the reasons discussed more fully below, I shall grant the motion to quash.

The plaintiffs in this action filed this action through two attorneys: Glen Pressman of Colorado Springs, Colorado and James Welsh of Omaha, Nebraska. Defendant retained Don Witt of Lincoln. Witt testifies that although Welsh was present at two of the depositions in this case Witt has "worked almost exclusively" with Pressman, including settlement negotiations. (*See* Filing 30, Defendant's Exh. 1, Affidavit of Donald R. Witt ("Witt Affidavit").) On September 2, 1994 Witt and Pressman agreed to settle the matter for $480,000.00. A letter to that effect dated September 6, 1994 was mailed to me by Pressman, indicating copies sent to Witt and Welsh. (*See* Filing 30, Defendant's Exh. 2.)[1] Witt testifies that a copy of that letter was sent to Welsh. (See Witt Affidavit, at 1.) Plaintiffs signed a release September 13, 1994 (Filing 30, Defendant's Exh. 3) and a settlement draft was mailed to Pressman for

---

**1.** The office copy of this letter was date-stamped as having been received September 9, 1994, although Mr. Witt informed my office of the settlement at an earlier time for purposes of trial scheduling.

deposit into Pressman's trust account. (*See* Filing 30, Defendant's Exh. 4.) On September 26, 1994 Welsh filed an attorney's lien in this court seeking recovery of 16⅔% of the settlement amount. (*See* Filing 28.) On November 4, 1994 defendant filed a motion to quash the lien. (*See* Filing 29.)

■ While federal common law does not recognize the attorney's lien, federal courts sitting in a state enforce that state's statute creating attorneys' liens. *See Panola Land Buying Ass'n v. Clark,* 844 F.2d 1506, 1514 (11th Cir.1988); *Adams, George, Lee, Schulte, & Ward, P.A. v. Westinghouse Elec. Corp.,* 597 F.2d 570, 573 (5th Cir.1979); *Lucky–Goldstar Intern. (America), Inc. v. International Mfg. Sales Co., Inc.,* 636 F.Supp. 1059, 1061 and n. 3 (N.D.Ill.1986); *cf. Matter of Southwest Restaurant Systems, Inc.,* 607 F.2d 1243, 1247 (9th Cir.1979), *cert. denied,* 444 U.S. 1081, 100 S.Ct. 1035, 62 L.Ed.2d 765 (1980); *but see Misek–Falkoff v. IBM,* 829 F.Supp. 660, 663–64 (S.D.N.Y.1993) ("[t]he nature and extent of an attorney's lien is controlled—certainly in a federal question case, and perhaps in all cases in federal court—by federal law"; refusing to authorize retaining lien as entailing undue delay of the litigation, citing *Fed.R.Civ.P.* 1.)[2]

■ Nebraska's attorney's lien statute provides:

> An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment; and upon money in his hands belonging to his client, and in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party.

*Neb.Rev.Stat.* § 7–108. Defendant argues that Mr. Welsh's lien was never perfected because Welsh failed to give proper notice while any money was in the hands of defendant adverse party within the meaning of section 7–108. (*See* Brief in Support of Motion to Quash, at 2–3.) Specifically, defendant argues that section 7–108 allowed Welsh

to establish his lien only on funds belonging to his client and in the hands of defendant at the time he gave notice of the lien. (*Id.* at 3.) Since Welsh's notice was not given until September 26, 1994, 13 days after defendant relinquished possession of the funds by mailing the settlement check to Pressman, defendant argues that Welsh failed to properly perfect his lien, and that the lien should therefore be quashed. (*See id.*) Mr. Welsh does not specifically address the notice issue, but instead responds that the check was "improperly issued" in this case and

> Thus, there was no *bona fide* settlement of the controversy by the litigants in this case. The settlement was not made in "ignorance of the attorney's rights." *Cones v. Brooks,* 60 Neb. 698, 84 N.W. 85 (Neb.1900). Rather, the Defendant knew, at the time is issued the check, of Mr. Welsh's status, and, presumably, his right to part of the proceeds.

(Brief in Opposition of Defendant's Motion to Quash, at 1.)

■ The common law recognized two types of attorney's liens: a retaining or general lien, and a charging or special lien. *See generally* William J. Ohle, *Oregon Attorneys' Liens: Their Function and Ethics,* 27 Willamette L.Rev. 891 (1991); *Note, Attorney's Liens: A Practical Overview,* 6 Bridgeport L.Rev. 77, 78 (1985). A general, retaining or possessory lien allows an attorney to retain possession of a client's property (e.g. books, documents, securities and other monies) coming into her hands during the course of her employment with that client. *See* 7 AmJur 2d § 315–18. The retaining lien is not enforceable *per se,* but rather serves as bargaining chip with which to force a settlement of outstanding fees. *See id.* at § 323. In Nebraska, the first clause of section 7–108 codifies the retaining lien:

> An attorney has a lien for a general balance of compensation *upon any papers of his client which have come into his possession in the course of his professional employment. . . .*

*Neb.Rev.Stat.* § 7–108 (emphasis added.)

■ The special or charging lien, by contrast, is not contingent upon possession of a

---

**2.** I find *Misek* distinguishable since I find no "important [federal] principles" in conflict with the assertion of the attorney lien in this case. *See Misek,* 829 F.Supp. at 664.

client's property, but rather arises in equity from the attorney's right to be paid her fees out of a judgment she has helped the client obtain. *See id.* at § 324. " 'The object of special or charging liens is to protect the claim of the attorney by equitable interference of the court, and to secure to him payment of just charges out of the fruits of his own labor.' " *Neighbors & Danielson v. West Nebraska Methodist Hospital*, 162 Neb. 816, 819, 77 N.W.2d 667, 669 (1956) (quoting *Jones v. Duff Grain Co.*, 69 Neb. 91, 95 N.W. 1, 2 (1903)). In Nebraska, the second clause of section 7–108 codifies the charging lien:

> An attorney has a lien for a general balance of compensation ... *upon money in his hands belonging to his client, and in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party.*

*Neb.Rev.Stat.* § 7–108 (emphasis added.)

■ Although not specified in the notice of lien (filing 28), it is apparent that Mr. Welsh seeks a charging lien, i.e., compensation from money (apparently) in the current possession of plaintiff's other counsel, Mr. Pressman.[3] Moreover, I construe Mr. Welsh's statement

that "this matter is controlled by the Nebraska statutes" (Brief in Opposition, at 1) as indication that he is seeking Nebraska's statutory attorney's lien remedy only, not any separate common law attorney's lien that may or may not exist under the equitable power of the Nebraska courts.[4]

It does not appear Mr. Welsh's charging lien falls within the provisions of section 7–108. At least with respect to the defendant in this matter—an "adverse party" within the language of 7–108—Welsh's charging lien could become effectual only if defendant was given "notice" while the "money" sought by Welsh was in the defendant's "hands." Here, when Welsh gave notice to defendant, the settlement funds sought were no longer in defendant's "hands" and had been deposited into Mr. Pressman's bank account.

■ Welsh's counterargument that defendant "improperly" drew the check with knowledge (not "ignorance") of Mr. Welsh's right to compensation is an equitable one, and while it may prove appropriate for purposes of an alternative equitable remedy,[5] I do not believe it overcomes the explicit notice requirement of 7–108. Accordingly, Mr. Welsh does not appear to have satisfied the

---

**3.** It appears Mr. Welsh has confused the nature of the lien asserted in his notice of lien. At one point Welsh refers to his "right to part of the proceeds," (Brief in Opposition, at 1,) which implies a *charging* or special lien, as discussed above. However, later in his brief Welsh attempts to defeat defendant's argument that Welsh failed to provide proper notice by asserting that the attorney's lien in Nebraska "goes to all funds or papers." This would be an entirely separate *retaining* lien, which, as discussed above, does not encompass a right to any funds or papers held by another party or adversary as Welsh asserts, but rather to property *held by the attorney asserting the lien*.

**4.** It appears the existence of such a common law equitable charging lien remains an open question. First, there is disagreement as to whether the attorney's lien is purely a creature of statute or simply a codification of the common law. *Compare Lewis v. Gallemore*, 175 Neb. 279, 282, 121 N.W.2d 388 (1963) ("[a]n attorney's lien was unknown at the common law and, like other statutes granting rights in derogation of the common law, it is subject to strict construction") *with Sayre v. Thompson*, 18 Neb. 33, 24 N.W. 383, 388 (1885) (Nebraska attorney lien statute was "but a re-enactment of the common law") *and Cones v. Brooks*, 60 Neb. 698, 84 N.W. 85, 85

(1900) (statute "declaratory of the common law") *and Zentmire v. Brailey*, 89 Neb. 158, 130 N.W. 1047, 1048 (1911) (same).

Second, it is unclear whether the Nebraska attorney's lien statute is the sole means by which an attorney's charging lien may arise. *Compare Young v. Card*, 145 Neb. 857, 18 N.W.2d 302, 304 (1945) ("an attorney has no lien for services performed by him except such as provided by statute") *and Marshall v. Casteel*, 143 Neb. 68, 8 N.W.2d 690, 691 (1943) (same) *and Card v. George*, 140 Neb. 426, 299 N.W. 487, 488 (1941) (same) *and Nicholson v. Albers*, 144 Neb. 253, 255, 13 N.W.2d 145 (1944), *with Marechale v. Burr*, 195 Neb. 306, 237 N.W.2d 860, 861 (1976) ("[a]part from section 7–108, R.R.S.1943, an attorney's lien, like any other, can be created by agreement ...") *and Neighbors & Danielson v. West Nebraska Methodist Hospital*, 162 Neb. 816, 819–20, 77 N.W.2d at 669–70 (1956) (implying that charging lien can arise by agreement, notwithstanding the Nebraska statutory lien provision) *and Tuttle v. Wyman*, 149 Neb. 769, 780–81, 32 N.W.2d 742, 749 (1948); *and Barber v. Barber*, 207 Neb. 101, 113, 296 N.W.2d 463 (1980) (quoted approvingly in *Kleager v. Schaneman*, 212 Neb. 333, 340, 322 N.W.2d 659 (1982)).

**5.** *See* note 4 *supra.*

993

requirements of Nebraska's statutory attorney's charging lien, and I shall grant defendant's motion to quash.[6]

**IT THEREFORE HEREBY IS ORDERED** that defendant's motion to quash (filing 28) is granted.

---

**6.** Welsh's notice of lien specifies only the money sought, not the parties from whom it is sought. However, it appears Welsh cannot satisfy the statutory requirements of Nebraska's statutory attorney's charging lien against any party or individual. Section 7–108 provides for a statutory charging lien under two circumstances: (1) for money *in the attorney's hands* belonging to the attorney's client; and (2) for money *in the hands of "the adverse party* in an action or proceeding in which the attorney was employed." (1) is clearly inapplicable, since all of the money is apparently in Mr. Pressman's trust account. (2) is inapplicable for Welsh's failure to give timely notice, as discussed above.