ANDERSON vs. STAR-BAIR OIL COMPANY et al.*
(VANATTA et al., Interveners)
(No. 1251; Feb. 16, 1926; 243 Pac. 394)

APPEAL AND ERROR—FRAUDULENT CONVEYANCES—JUDICIAL SALES—
PARTIES—ATTORNEY AND CLIENT—ATTORNEY'S LIEN ON JUDGMENT
IN FAVOR OF CLIENT—ELECTION OF REMEDIES.

1.  Interveners, in suit to foreclose mortgage, were not entitled to appeal from prior judgment adjudicating various liens on mortgaged property, where record on appeal in such case was not filed within time granted by trial court.

2.  In suit to foreclose mortgage, that court did not permit certain parties to file petitions in intervention was immaterial, where court heard and considered their objections to sale of such property on foreclosure, and permitted them to introduce testimony in support of objections.

3.  Where sale on mortgage foreclosure was valid and rightly confirmed and approved, and proceeds fell short of paying certain liens adjudged to have priority, interest of interveners, whose claims were based on judgment foreclosing such mortgage, was immaterial.

4.  Where, in action for money due, property subject to chattel mortgage was attached on claim that mortgage was

fraudulent, and court upheld attachment and ordered property sold, in view of facts that only part of property was delivered to buyer, and part of that delivered to him was replevied from him, and buyer did not pay for property, but parties interested treated sale as abandoned, action of court in treating it as abandoned and confirming second sale of such property on foreclosure of chattel mortgage thereon was proper; order refusing to set second sale aside and confirming it being tantamount to resale.

5. Although purchaser at judicial sale may be compelled to complete purchase and pay price, or may be held responsible for any deficiency, such remedy is not exclusive, where property is subject to chattel mortgage, under which it may be sold.

6. Where parties, claiming to be real owners of judgment foreclosing chattel mortgage, had not established their claim, and main case had been tried and disposed of several months prior to their filing petition of intervention, denial of such petition was within trial court's discretion, and they had no interest in possible action for use of property prior to sale thereof on foreclosure of mortgage.

7. Under Comp. St. 1920, § 4885, giving attorney lien on property of client in his hands and on money due client in hands of adverse party from time of giving notice of lien to such party, notice required is for benefit of judgment debtor, and attorney has lien on judgment, regardless of assignment thereof to assignee, who had no notice of his lien.

8. Before adoption of Code, attorney had lien on judgment obtained by his assistance, and he is, to extent of his services, with certain limitations, regarded as equitable assignee of judgment.

9. Permitting attorney to intervene in suit to foreclose chattel mortgage for purpose of protecting his lien thereon did not prejudice his rights in equity to enforce lien on judgment against assignee thereof.

*NOTE—See Headnotes (1) 3 CJ p. 1067 n. 28 (2) 4 CJ pp. 649 n. 36; 926 n. 11 (3, 4) 4 CJ p. 649 n. 36 (5) 11 CJ p. 731 n. 59 New; 23 CJ p. 651 n. 93, 94; 35 CJ pp. 118 n. 81, 82, 83, 84, 92; 119 n. 20, 21 (6) 31 Cyc. p. 520 n. 29 (7) 6 CJ p. 773 n. 44 (8) 6 CJ pp.

766 n. 81; 767 n. 82; 768 n. 87; 771 n. 29, 31; 773 n. 44 (9) 20 CJ p. 6 n. 54.

ERROR to District Court, Natrona County; CYRUS O. BROWN, Judge.

Action to foreclose a chattel mortgage by Charles Anderson against the Star-Bair Oil Company and others, in which E. G. Vanatta and others intervened. From a judgment foreclosing the mortgage and settling the priority of certain liens on the property in question, an appeal was taken by plaintiff, but abandoned by J. H. Adriance, his assignee. From a judgment overruling objections to the confirmation of the sale of the property on execution and entering an order of approval thereof, the interveners appeal.

*E. G. Vanatta* for interveners.

The assignments are an attempt to defeat the lien of Vanatta upon the judgment filed to recover his fees for services in the litigation. The judgment recovered by National Supply Company, giving it a preference over the mortgage, was without authority of law; 4696 C. S.; 4711 C. S. There is no denial of either of the petitions in intervention. They do not require a retrial and are permissable. 26 L. Ed. 951. Intervention is allowable after judgment, if property be under the order of the court. 34 L. Ed. 845. The intervention is supplementary to original suit. Crippendorf v. Hyde, 28 L. Ed. 145. An attorney has a lien upon his client's judgment. Twiggs v. James, 56 Ga. 279; Skaggs v. Hill, 14 S. W. 363. The lien cannot be defeated by dismissal of the action over attorney's objection. Weeks v. Wayne, 73 Mich. 256; 41 N. W. 269; Payne v. Parks, 1st How. Pr. 94; Marquart v. Mulvy, 9th How. Pr. 460; Degraw v. Borden, 3rd Abb. Pr. 337; Sullivan v. O'Keefe, 53 How. Pr. 424. It cannot be defeated by an assignment of the judgment. Frink v. McComb, 60 Fed. 486; Gill v. Truelsen, 40 N. W. 254; Christy v. Sawyer, 44 N. H. 298. An assignee takes the judgment

subject to the lien.  Cunningham v. McCreedy, 61 Tenn.
141; Heister v. Den, 17 N. J. L. 438.  Vanatta could not be
discharged until paid.  9 Wyo. 368; 2 R. C. L. 1002.  An
attorney's lien is allowed by statute.  4885 C. S.  If as-
signee takes the judgment subject to the lien, 14 L. R. A.
(N. S.) 1101; 9 L. R. A. (N. S.) 282, it is held that an at-
torney has an equitable lien from the filing of the case,
without filing a similar lien.  Koons v. Beach, 45 N. E. 601.

*Frank England* and *Henry E. Perkins* for respondent.

Interveners must be diligent.  20 R. C. L. 688; Walker
v. Sanders, 123 A. S. R. 294; Hunt v. McDonald, 102 N. W.
318.  An attorney's lien attaches only from notice.  4885
C. S.  An attorney, failing to file his lien before a transfer
of the judgment, forfeits the right.  Fillmore v. Wells, 15
Pac. 346.  The lien must relate to the subject matter of
the suit.  So. Pac. Co. v. Winton (Texas) 66 S. W. 477.
Such lien cannot be enforced by intervention.  Standige
v. Ry. Co. (Ill.) 40 L. R. A. (N. S.) 529; Brown v. Morgan,
163 Fed. 395; Davis v. Jackson, (Ga.) 12 S. E. 299.  An
order confirming a pretended sale cannot defeat a regular
sale held thereafter.  A question between parties decided
in an action cannot, as between themselves, be raised in
any other suit.  Graham v. Culver, 3 Wyo. 639; 15 R. C.
L. 452.  No interest can be acquired in the subject matter
of a suit by third persons, after it is commenced; 5644 C.
S.  Interveners were guilty of laches.  Walker v. Sanders,
Supra.  The statute confirming attorney's liens, provides
that the lien attaches from the time of giving notice of the
lien, 4885 C. S.  Vanatta's lien never attached under the
statute and cannot be enforced in the judgment proceed-
ing by intervention.  So. Pac. v. Winston, Supra; Koons v.
Beach, (Ind.) Supra.  In Main and Michigan, statutes
give attorney's liens after judgment.  An examination will
show that the authorities cited, by plaintiff in error, do
not apply in the present case.

BLUME, Justice.

The record in this case is voluminous. There were many parties to the action and the issues involved appear somewhat confusing at first blush. We shall, however, in order that the vital points herein may appear clearly, make no, or only slight, mention of immaterial matters or of parties who have no particular interest in this appeal. The material facts are about as follows:

J. D. Jones was, on May 3, 1921, manager of the Star-Bair Oil Company, a corporation doing business in Natrona county, Wyoming. On that date the oil company executed to him and to Laura E. Jones, his wife, a note for $8500, secured by a chattel mortgage upon all of the property of said oil company, consisting, as we take it, of an outfit for drilling oil wells. About the month of July, 1921, the National Supply Company, one of the respondents herein, brought an action against said oil company to recover judgment for money due, and caused a writ of attachment to be issued against all of the property of said Star-Bair Oil Company, and claimed that the mortgage given to Jones and his wife was fraudulent. Jones and his wife were both made defendants in that action. A judgment was rendered in that suit on January 5, 1922, for the sum of $2726.60, and the court upheld the attachment theretofore levied upon the property in controversy. In the meantime, pending that action, and before judgment was rendered therein, J. D. Jones and his wife assigned the note and mortgage hereinbefore mentioned to Charles Anderson, who in turn, on October 1, 1921, and without reference to the suit of the National Supply Company, brought an action in the district court of Natrona county against the Star-Bair Oil Company, National Supply Company, Laura E. Jones and other parties, for the foreclosure of the mortgage of May 3, 1921, alleging that the lien of said mortgage was superior to any rights of such defendants, and asking that the claims of such defendants, including that of the National Supply Company,

be declared to be junior and inferior to the lien of said
mortgage. Most of the defendants in that cause appeared
and filed answer. It is this action, in which the appeal
herein was taken, and is the action hereinafter considered.
While the case was pending and before the trial thereof,
the various parties interested therein joined in an applica-
tion to the court to have the property in controversy—
included in the mortgage aforesaid and attached as above
mentioned—sold, on the ground that it was perishable and
expensive to keep. The court, accordingly, made an order
of sale thereof, and an attempted sale took place on De-
cember 27, 1921, to J. R. Dunbar, for the price of $8772.
No money, however, was ever paid by the purchaser, and
the sale remained incomplete as hereinafter more fully
mentioned. The case came on for final hearing on Febru-
ary 27, 1923, upon the issues joined therein. The court
entered judgment on that date, adjudicated the various
liens against the property in controversy and established
the same in the following order of priority, namely: First,
a labor lien in favor of one Kelly and one Downs in the
sum of $310.60 (not in controversy here): Second, a lien
in favor of the National Supply Company in the sum of
$2726.60: Third, a lien in favor of Charles Anderson, the
plaintiff, arising out of the mortgage aforesaid, in the sum
of $8500, and attorney's fees in the amount of $1901.71.
All other parties were declared to have no lien or claim
against the property in controversy. An appeal from said
judgment was begun by Anderson, but was abandoned by
J. H. Adriance, who, as will be stated directly, became An-
derson's assignee. Hal Curran, who appeared as Ander-
son's attorney at the commencement of the action, was
discharged as such some time prior to February 27, 1923,
and E. G. Vanatta thereafter appeared and acted as An-
derson's attorney in said cause.

On June 28, 1923, Charles Anderson made and executed
an assignment of the judgment in his favor, in the action
aforesaid, to J. H. Adriance, reciting that the assignment

was made for a valuable consideration. It was filed as part of the files in said action, at 1:30 in the afternoon of that date. On the same day, E. G. Vanatta executed a notice claiming an attorney's lien for the sum of $3500 upon the same judgment. This notice was filed in said action at 4:40 in the afternoon of that day, and was served upon the various parties to the action on the following day. On July 31, 1923, J. H. Adriance, in turn, assigned the judgment in favor of Anderson to the National Supply Company, for the purpose of having an execution issued in said cause. Such execution was issued on August 7, 1923, the property in controversy was levied on and sold, at sheriff's sale, on August 29, 1923, to the National Supply Company for the sum of $2500. E. G. Vanatta, J. D. Jones and Laura E. Jones, filed objections to the confirmation of said sale, mainly upon the ground that the same property had previously been sold on December 27, 1921, to J. R. Dunbar, for the sum of $8772, as hereinbefore mentioned. In the meantime, and on July 23, 1923, E. G. Vanatta also filed a petition of intervention, claiming that the assignment of the judgment by Charles Anderson to J. H. Adriance was made for the purpose of defrauding him, and asking that he be made a party to the cause and that the assignment aforesaid be set aside as fraudulent. On August 3, 1923, J. D. Jones and his wife also filed a petition of intervention, alleging that they were the real parties in interest; that Anderson was only the representative of interveners and had no interest in the judgment in his favor, except the sum of $500; and that the assignment of said judgment to Adriance was made for the purpose of defrauding them. They accordingly prayed that said assignment be set aside and that they be declared to be the substituted owners of the judgment. Motions to be permitted to file these petitions of intervention were filed by the parties respectively. The motion for confirmation of the sale aforesaid, filed in said cause, the objections thereto and the motion for permission to file said petitions

of intervention, came on for hearing on November 5, 1923. The court found that a sale of said property in controversy had been attempted to be made pursuant to an order of the court on December 27, 1921, at which sale one J. R. Dunbar bid the sum of $8772; that a portion of said property was turned over to said bidder; that part of it was not delivered to him; that a large portion of the casing, constituting a part of the property, was stolen property and was taken from the possession of Dunbar under a writ of replevin; that the attempted sale was in fact void, for the reason that the terms of the order directing the sale were not complied with, and that the sale was not in fact completed. The court overruled the objections to the confirmation of the second sale, and entered an order of approval thereof. The motions of Vanatta and Jones and his wife, to be permitted to intervene in said action, were denied. From the judgment so entered, E. G. Vanatta, J. D. Jones and Laura E. Jones, hereinafter referred to as interveners, have appealed.

1.   The interveners state in their notice of appeal herein, that they appeal not alone from the judgment rendered on November 5, 1923, but also from the judgment entered in said court on February 27, 1923, and a number of errors are assigned and argued relating to the latter judgment, as well as to proceedings in the cause prior to the entry thereof. They argue, for example, that the court erred in declaring the lien in favor of the National Supply Company to be superior to that of Charles Anderson. It is not necessary to decide as to whether these interveners would at any time have had a right to appeal from the earlier judgment. Even if they would have had such right, their appeal was taken too late. By order of the court, the plaintiff, Charles Anderson, was granted until June 27, 1923, to file a record on appeal. None was filed within that time. The only record on appeal in said cause was filed March 17, 1924—too late, therefore, to serve as a basis for any assignment of errors against the earlier judgment, or

the proceedings in said cause prior to that time. That judgment, accordingly, cannot be attacked herein, and we cannot review any errors assigned herein relating thereto or to the proceedings in said cause prior thereto.

2.   Interveners, as hereinbefore stated, filed objections to the confirmation of the sale. The court heard and considered these objections, and treated interveners—whether rightly or not need not be determined—as parties sufficiently interested in the case to be entitled to file these objections, and permitted them to introduce testimony in support thereof. Consequently, so far as this matter is concerned, it is altogether immaterial that the court did not permit them to file their petitions in intervention.

The sale made on August 29, 1923, brought, as hereinbefore stated, the sum of $2500. That fell short of paying the labor liens and the lien of the National Supply Company, by some $500. These liens were prior to that of Charles Anderson, and nothing was left to apply on his judgment. Whatever rights these interveners have, are based upon that judgment. If such sale, on August 29, 1923, accordingly, was valid, and rightly confirmed and approved by the court, it is wholly immaterial, so far as the property covered by that sale is concerned, what interest interveners might have in the judgment in favor of Anderson. We shall, therefore, consider whether the court's order confirming said sale was right. We have already set out the court's findings, but we shall, briefly, set out the evidence on which they are based. It appears, as heretofore stated, that during the pendency of the action herein and on the 14th day of December, 1921, the parties to said action all applied to the court to order the sale of the property in controversy, by reason of its perishable nature and because of the excessive cost of keeping it. The court accordingly, on December 15, 1921, ordered the property to be sold for cash. Pursuant thereto, the property was duly offered for sale on December 27, 1921, and J. R. Dunbar, the highest bidder, offered $8772, and he

was declared to be the purchaser. But he never paid anything, and never offered to pay the purchase price, for the reasons mentioned directly. The sale was never formally confirmed, although the court, on August 26, 1922, ordered the sheriff to pay the money received from the sale aforesaid into the hands of the clerk, which was not done. Part of the property was evidently delivered to Dunbar, part of it was not, and soon after the sale a large part of the casing included in the sale was replevied from him as stolen property. There is testimony in the record that the creditors interested in the action agreed that no money should be paid at the sale above mentioned. In fact a written stipulation seems to have been entered into between the parties, specifying just what was to be done with the property. The terms of this stipulation do not clearly appear. Dunbar turned the property, which remained in his hands, over to the Five Tribes Company, and later to E. T. Williams & Company. The property was used during a number of days or perhaps months, and there is testimony in the record to the effect that the rental value of the property, when in actual use, was the sum of $50 per day. Numerous attempts were made, it seems, by the various parties to the action, during 1922 and 1923, to dispose of the property, but they were unable to do so. E. T. Williams & Company offered to take it over for the sum of $8500, but insisted upon a guaranty of the title of the property. No one offered to furnish such guaranty, and nothing became of that offer. That, then, was the situation when an execution was issued herein on August 7, 1923, as hereinbefore stated.

There are indications in the record that in 1921 the property in controversy was appraised at $15,000. But that included the stolen property. Of what value that was, is not shown; nor does it appear to what extent the property depreciated in the meantime. So far as the record before us shows, the price bid at the second sale was not disproportionate to the value of the property at that

time, particularly in view of the apparently uncertain condition of the title. The first sale of the property, upon which interveners mostly rely in order to have the second sale defeated, was not, apparently, intended to be binding upon Dunbar, or seems to have been abandoned subsequently by consent of all the interested parties. But whether that is true or not, the fact remains that it was never carried out and the money bid thereat was never paid. It is said in 35 C. J. 118, that when the purchaser at a judicial sale fails to comply with the terms of the sale in making payment or furnishing security therefor, the court may, and generally will, order a resale. And in 35 C. J. 119, it is said that an order for resale is always proper and generally necessary in order to charge a defaulting purchaser. The second sale in the case at bar was, it is true, made upon execution. No specific order to resell the property was made, which, perhaps, under the circumstances, should have been obtained. But the order refusing to set the second sale aside and confirming it was tantamount thereto. Frequently, doubtless, an action may also be brought against the purchaser to compel him to complete the purchase and pay the purchase price, or to hold him responsible for any deficiency. 35 C. J. 118; 23 C. J. 651. In the case at bar it may be doubtful whether, under the circumstances, there was any cause of action against Dunbar. We do not pass upon that point, however. The facts in the record are not sufficiently clear to do that, even if it were otherwise proper for us to do so at this time. In any event, the remedy to hold the purchaser for the whole purchase price cannot be held to be exclusive, for a purchaser at a judicial sale may not be able to pay. For aught that appears in the record, Dunbar may have been wholly insolvent, so that it might have been highly disadvantageous to have treated him as the purchaser and owner of the property, relying on an action against him for the purchase price. We cannot, accordingly, say that the trial court erred in confirming the sec-

ond sale, and the judgment of November 5, 1923, must be affirmed in that respect.

3.   This disposes of all questions directly relating to the property sold by the sheriff at the second sale, that of August 29, 1923, and interveners have no further interest therein or to the proceeds therefrom.   But that does not dispose of all the questions arising in the case.   It appears from the record, as stated before, that the property sold was in use during at least part of the time prior to that sale, and that such use was of considerable value.   It may, therefore, be, without, however, deciding the point, that the parties interested in the judgment in favor of Charles Anderson, may have a cause of action against the parties who should pay for such use and it accordingly becomes necessary, particularly as to Vanattta, whose rights might otherwise, in view of the holding of the trial court, be barred, to inquire whether or not the interveners have such an interest in the judgment so as to entitle them to participate in whatever might be so recovered.   It is clear that Jones and his wife have no such interest therein at this time.   They claim to be the real owners of the judgment, but that claim has not been established.   We need not decide whether it might ever be established in the manner in which they sought to do it here.   It is clear that the court committed no error in denying them the right to intervene for that purpose under the circumstances in this case, for the main case had been tried and disposed of several months before their petition of intervention was filed. Mrs. Jones was a party to the action, but did not defend or assert any rights.   When they accordingly asked to file their petition of intervention in August, 1923, it was clearly in the court's discretion to deny them the right to do so.   20 R. C. L. 688; Longmire v. Inv. & Land Co., 95 Wash. 302, 163 Pac. 782; U. S. v. Northern Sec. Co., 128 Fed. 808; Davy v. Village of Hyde Park, 16 O. C. C. 506, 8 O. C. C. 371; W. D. Jenkins L. Co. v. Cramer Bros., 182 Ia. 161, 160 N. W. 42; Switzer v. Eadie, 71 Kan. 859; 80

Pac. 961; Dubbers v. Gaux, 51 Cal. 153; Hollett v. Larcom, 5 Idaho 491, 51 Pac. 108.

4. But the rights of E. G. Vanatta stand upon a somewhat different footing. He was an attorney of record in the case for Charles Anderson, before, at the time, and after the judgment of February 27, 1923, was rendered, and he claims an attorney's lien upon that judgment in so far as rendered in favor of Anderson. The court held that the assignment of the judgment to Adriance, for a valuable consideration, before notice of the lien was served, deprived Vanatta of all interest therein. In this, we think, the court was in error.

Section 4885, W. C. S. 1920, gives a lien to an attorney, and provides:

"An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment, upon money in his hands belonging to his client, and upon money due to his client and in the hands of the adverse party, in an action or proceeding in which the attorney was employed, from the time of giving notice of the lien to that party."

This statute did not originate the lien in favor of an attorney, except possibly in recognizing that it is not confined to statutory costs, which in many states are taxed in favor of attorneys. A lien in favor of an attorney upon a judgment obtained by his assistance was recognized by the common law before the adoption of our code. Rooney v. Second Avenue R. R. Co., 18 N. Y. 368; Marshall v. Meech, 51 N. Y. 140; 10 Am. Rep. 572; Jennings v. Bacon, 84 Iowa 403, 51 N. W. 15; Brown v. Morgan, (C. C.) 163 Fed. 395; Welsch v. Hale, 1 Doug. 238, 99 Eng. Rep. 155; Read v. Dupper, 6 Term R. 366, 101 Eng. Rep. 595. In the last cited case the chief justice said that a party should not be permitted to "run away with the fruits of the

cause without satisfying the legal demands of his attorney, by whose industry, and in many instances at whose expense, those fruits are obtained.'' True, the lien in favor of an attorney was recognized in England only to the extent of the costs and expenses taxed in favor of the attorney, a practice also adopted in the early day by a few of the states in this country. 6 C. J. 771. But the limitation was based upon the theory, derived from Roman times, that while it was proper for a lawyer to accept an honorarium, it was beneath the dignity of his profession to insist upon or sue for compensation in the ordinary sense, for the services performed by him. But that theory was not adapted to the conditions of this country, the inhabitants of which did not, in the early days, at least, abound in wealth, and whose livelihood depended upon the honest compensation received for their labor, whether that labor was performed in the field or in the forum of the law, and the acceptance and enforcement of such honest compensation by a lawyer, if in fact honest, has not been considered inconsistent with the high dignity of his profession. Hence the principle of the common law above mentioned was generally applied in this country as adapted to its conditions, and an attorney has a lien upon a judgment obtained by his efforts and is to the extent of his services, with certain limitations which need not be considered here, regarded as an equitable assignee of the judgment. 6 C. J. 766.

But it is argued, and the trial court held, that the lien of Vanatta could not be binding upon any one until notice thereof was given to the judgment debtor, as contemplated by section 4885, W. C. S. 1920. Such was held to be the law in the case of State Bank v. Davidson, 7 Colo. App. 91, 42 Pac. 687. So, too, in Iowa, where notice of the lien is required to be given by entering the same upon the judgment docket, it was held that an assignee of the judgment takes it free from such lien in case the notice is not filed as required by statute. Jennings v. Bacon, 84 Iowa 403,

51 N. W. 15. It may, indeed, be that a statute like that in Iowa should be held to be intended for the benefit of everyone whatever, and no great hardship could result in requiring compliance therewith. But we have no such statute and it was held in State Bank v. Davidson, supra, that in the absence of such a statute, no entry of a notice of a lien on the judgment docket is effective against an assignee of the judgment without actual, as opposed to constructive, notice thereof. How then can an attorney protect his lien against an assignee of the judgment creditor, when he knows nothing of an intended assignment? It is argued that this must be done by giving notice to the judgment debtor. But of what benefit is that to an assignee of the judgment creditor, and why should he be able to take advantage of the fact that no notice has been given to a third party? It is, accordingly, held by the great weight of authority, that, at least under a statute like that in this state, the notice therein required to be given is for the benefit of the judgment debtor; that no notice is necessary to be given to the assignee of a judgment, whose duties it is to inquire as to whether or not the attorney of record has an unsatisfied lien, and that he takes his assignment subject thereto. Sexton v. Pike, 13 Ark. 193; McCain v. Portis, 42 Ark. 402; Wilkins v. Batterman, 4 Barbour 47; Delval v. Gagnon, 213 Mass. 203, 99 N. E. 1095; Tyler v. Slemp, 124 Ky. 209, 90 S. W. 1041; Peterson v. Struby, 25 Ind. App. 19, 56 N. E. 733, 57 N. E. 599; Maloney v. Douglass Co., 2 Neb. Unoff. 396, 89 N. W. 248; Heart v. Chipman, 2 Aik. (Vt.) 162; Bent v. Lipscomb, 45 W. Va. 183, 31 S. E. 907, 72 A. S. R. 815; Renick v. Ludington, 16 W. Va. 378, 6 C. J. 773; Jones on Liens, (3rd ed.) Sec. 226. In the case of Renick v. Ludington, supra, the court said:

"The attorney's lien of the judgment is not hidden, secret or concealed. It stands out in relief upon the record, not only giving the party, about to take an assignment of

the judgment, means of informing himself whether the judgment has been satisfied, but also the name of the attorney for the plaintiff, of whom he may inquire whether his fees have been paid. If he neglects to make such inquiry, he is guilty of gross negligence, and to this and not to the law should be attributed any loss he may sustain.''

In the case of Heart v. Chipman, supra, perhaps the leading case on the subject, the court says:

''It is insisted, that if the assignment was made *bona fide,* without any collusion or design to defraud, and without notice from the attorney, of his claim, it is valid, and the lien is gone. The cases cited in support of this principle are none of them cases in which an assignee of the judgment was concerned, but are cases of payment made by the debtor to the creditor himself.  *  *  *

If it is necessary for the security of the attorney, as against the debtor, to give notice to him of his lien, this may be done with convenience, as the attorney must know who the debtor is; but it is apparent, in case the debt is assigned, he may not, and most likely cannot, know who the assignee is. It is more reasonable to require the assignee, who takes the demand subject to the same equity, and in no better condition than it was in the assignor's hands, and who knows, or is presumed to know, the law as to the attorney's lien, to make the necessary inquiry before he takes the assignment of a judgment; and notice to him from the attorney, which must frequently be impracticable, is not necessary. The attorney has a lien upon the debt, while the money remains in the hands of the debtor; and  *  *  *  as between the creditor and his attorney, the money to the amount of the claim of the latter is his, and cannot be assigned by the former; and whoever may receive it under an assignment of the judgment, by which he is of course advised of the rights and claims of the attorney, ought in justice to be considered as holding it to his use and for his benefit.''

In Malony v. County of Douglass, supra, the court, in passing upon a statute identical with section 4885, W. C. S. 1920 (see 18 Neb. 42, 24 N. W. 383), said:

"Counsel for plaintiff in error concede that no notice was necessary as against the client. They cite no case holding that the client's assignee was, or is, in any better position. We can see no reason why one who buys a claim, then in an attorney's hands, and being by that attorney prosecuted before a judicial tribunal, should not be held to take it subject to all the attorney's rights in it as against his original client."

It is apparent from the foregoing authorities, that the assignment made by Anderson to Adriance in no manner affected the lien which Vanatta had upon the judgment in favor of the former. We are not, of course, passing upon the extent of that lien. Nor is it necessary to decide in what manner that lien, if now of any value, may be enforced. That Vanatta was not permitted to intervene in the action did not prejudice him, as he still would, in any event, have an action in equity to enforce his rights as against the assignee of the judgment. Brown v. Morgan, 163 Fed. 397, 2 R. C. L. 1084, sec. 177.

It is accordingly ordered that the judgment of the district court of November 5, 1923, be modified by striking therefrom any finding or other statement therein to the effect that the assignment by Anderson to Adriance affected the lien of Vanatta on the judgment of February 27, 1923, in favor of the former; that in all other respects said judgment of November 5, 1923, and also the judgment of February 27, 1923, be affirmed. It is so ordered.

*Modified and Affirmed.*

POTTER, C. J., and KIMBALL, J., concur.