333 P.2d 286

Milton LINDER, individually and as assignees of Louis S. Marches and/or Marches Packing Co., Inc., Appellant,

v.

LEWIS, ROCA, SCOVILLE & BEAUCHAMP, a copartnership, and Strock & Co., Inc., Appellees.

No. 6520.

Supreme Court of Arizona.

Dec. 17, 1958.

Trew, Woodford & Dodd, Phoenix, for appellant.

Lewis, Roca, Scoville & Beauchamp, Phoenix, for appellee, Lewis, Roca, Scoville & Beauchamp.

Phil J. Munch, Phoenix, for appellee, S. Strock & Co., Inc.

STRUCKMEYER, Justice.

This is an action in garnishment wherein S. Strock & Co., Inc., as the garnishor alleged a fraudulent conveyance; and Lewis, Roca, Scoville & Beauchamp intervened, asserting an attorney's lien. Judgment was entered in their favor and this appeal followed. Such facts as are necessary to understand the questions presented will be stated in a light most favorable to appellees, the prevailing parties in the court below.

In the year of 1952, one Louis S. Marches employed Harold R. Scoville, attorney at law of the firm of Lewis, Roca, Scoville & Beauchamp, to bring an action for malicious prosecution against one Jack Tolmachoff. This action ultimately resulted in a verdict and judgment in favor of Marches in the sum of $15,000. At or near that time, Marches was seemingly heavily indebted to others, it being established on the trial of the garnishment that at least nine judgments were unsatisfied and outstanding against him in Arizona. One was the judgment in favor of appellee S. Strock & Co., Inc.

Shortly after obtaining his judgment, Marches left Arizona and went to Los Angeles, California. There he engaged appellant Milton Linder, a Los Angeles attorney, to collect the judgment. To that end he executed an absolute conveyance to Linder, which recited that for a valuable consideration Marches "has assigned, sold and transferred, and hereby does assign, sell and transfer to Milton Linder the judgment." Among other things, he appeared in supplemental creditors' proceedings in the Superior Court of Maricopa County, Arizona, in propria persona as assignee of Marches. He entered into discussions with Harold R. Scoville in regard to Scoville's attorney's lien for legal services performed in obtaining the judgment. He represented to both Scoville and K. Donald Wren, attorney for Jack Tolmachoff, that he was the purchaser of the judgment for a valuable consideration and the owner thereof. Further discussions with Wren terminated in an understanding that Tolmachoff would pay the judgment in full. Consequently, on April 15, 1956, Linder came to Phoenix, Arizona, from California. He arrived in Phoenix by plane at 10:00 o'clock a. m. and was then in possession of a return-trip ticket to Los Angeles on a flight leaving at 12:00 noon. Directly upon

his arrival, he went to Wren's office and received payment of the entire judgment, together with interest and costs, but just after leaving Wren's office, he was served with the writ of garnishment by S. Strock & Co., Inc. Although Linder as garnishee was charged under the pertinent Arizona statutes with the responsibility for the fund until a determination of the respective rights therein, Gillespie Land & Irrigation Co. v. Jones, 63 Ariz. 535, 164 P.2d 456, upon his return to California he paid over the proceeds less his expenses and charges to a second assignee, a woman by the name of Grace Thomas about whom more will be said later.

In his sworn affidavit in answer to the garnishment, Linder set forth that Louis S. Marches had no interest in the assignment or in the named action by Marches against Tolmachoff and that Milton Linder did not have, nor did he have at the time of the service of the writ, in his possession any effects of Louis S. Marches. Lewis, Roca, Scoville & Beauchamp intervened in the garnishment proceedings and asserted a prior right to a portion of the proceeds of the judgment by virtue of an attorney's charging lien. After several hearings, judgment was entered in favor of both garnishor S. Strock & Co., Inc., and intervenors in the full amount of their claims.

■ Appellant first contends, with which contention we will deal summarily, that the trial court erred in denying his motion to quash the garnishment for the reason that service of the garnishment was fraudulently obtained by enticing him into the territorial jurisdiction of the Superior Court of Maricopa County. Linder testified that Wren promised that if he [Linder] came to Phoenix to collect the funds due on the judgment, his presence in Phoenix would not be disclosed to Marches' creditors. Wren denied making any such representations. There being a direct conflict in the evidence, it is sufficient to say that the trial court's determination of the fact is binding here.

■ We will now consider the position of intervenors Lewis, Roca, Scoville & Beauchamp. On January 17, 1955, long before Linder came to Arizona and collected the judgment, Scoville wrote a letter to Linder concerning his fee arrangements with Marches. Since the letter accurately summarizes the testimony of Scoville at the trial, the pertinent parts are quoted.

" * * * Louis is fully aware that we undertook the false arrest case only after considerable conversation as to a fair method of compensation. I was well aware then of the problems of collection in the event we were able to secure a substantial judgment. Louis was insistent on bringing the action as a matter of principle to him and without regard to the practical aspects of being sure of recovery.

"I believe you know that I had successfully defended Louis in the criminal case. I asked Louis to get other counsel for the civil suit, but at his insistence finally agreed to take the case upon the basis of a fee minimum time charge, with a retainer thereon, plus an additional contingent fee *in the event of collection of any judgment obtained.* Louis agreed that we should undertake the work with a firm charge on a fee minimum basis of $15 per hour and at that rate for court time, with a retainer on account thereof in the sum of $500, which Louis paid, *plus one-third of any monies recovered.*" (Emphasis supplied.)

Intervenors' rights are dependent upon the intention of the parties to create a charging lien, Barnes v. Shattuck, 13 Ariz. 338, 114 P. 952, affirmed Barnes v. Alexander, 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530, or as has been said, it must appear that the parties looked to the fund itself for the payment of the attorney. Button's Estate v. Anderson, 112 Vt. 531, 28 A.2d 404, 143 A.L.R. 195.

It is evident that the terms of compensation are divisible. (1) Scoville was to receive a minimum fee of $15 per hour with a retainer on account in the sum of $500. Here, the intention of the parties is clear. This was the personal responsibility of Marches. (2) But in the event the litigation terminated favorably, the situation was different. Scoville was to receive as an additional fee one third of any monies recover-

ed. The trial court could have found an intention of the parties to create a charging lien which was to be paid from "any monies recovered."

Where an attorney has a charging lien against a fund, a portion to the amount of his claim belongs to the attorney and cannot be assigned by the judgment creditor, and whoever receives it under an assignment is, in justice, to be considered as holding to the attorney's use and benefit. Anderson v. Star-Bair Oil Co., 34 Wyo. 332, 243 P. 394. We hold that the assignment made by Marches to Linder did not in any manner affect the charge against the fund in favor of Scoville. His interest in it as the person helping create the fund is paramount and superior to the rights of other persons.

It is apparent from what has been stated that the trial court was justified in concluding that Linder in collecting the entire proceeds of the judgment intended to deprive Scoville of the benefits of his attorney's lien. Whether the facts are sufficient to constitute actual fraud is unnecessary to decide. Even where actual fraud does not exist in the acquisition of property, a constructive trust will arise whenever the circumstances make it inequitable that the property should be retained by the one who holds the legal title. Eckert v. Miller, 57 Ariz. 94, 111 P.2d 60; MacRae v. MacRae, 37 Ariz. 307,

294 P. 280. The forms and varieties of these trusts are practically without limit and the principle is applied wherever it is necessary for the obtaining of complete justice. We think that justice was done by the lower court in awarding judgment against Linder in Scoville's favor.

■ Appellant has argued in this court that it is reasonable to assume that Scoville was not to receive one third of the judgment unless he, Scoville, collected it. It is sufficient to say that Scoville was to be paid the contingent part of the fee "in the event of collection" and not *unless* he collected the judgment. That is to say, when and if monies were recovered under the judgment, Scoville was to receive his percentage share.

■ Garnishor S. Strock & Co., Inc., in response to Linder's verified answer as garnishee, filed tender of issue, asserting that the purported assignment to Linder was made without consideration and in fraud of S. Strock & Co., Inc. Linder moved to dismiss the tender of issue on the grounds that it failed to comply with Rule 9(b), Rules of Civil Procedure, 16 A.R.S. This rule requires that the circumstances constituting fraud be stated with particularity. It is an exception to Rules 8(a) and 8(b) directing parties to state in short and plain terms their claims for relief and defenses. Brazee v. Morris, 65 Ariz. 291, 179 P.2d 442.

■ A.R.S. § 44–1007 of the Arizona Fraudulent Conveyance Act provides:

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

This section specifies the elements of fraud where a fraudulent conveyance is asserted. Patently, it does not require the nine elements of common-law fraud. Garnishor's tender of issue provided that the purported assignment was made in fraud of plaintiff-garnishor and alleged that in fact garnishee was indebted to Marches. A conveyance, absolute on its face but with a secret reservation in the grantor, is an accepted badge of fraud. Heath v. Helmick, 9 Cir., 173 F.2d 157. Accordingly, the allegations of the tender of issue bring it within the comprehension of § 44–1007.

■ Appellant next argues that the evidence is not sufficient to prove that the conveyance from Marches to Linder was fraudulent. We think to the contrary. We have pointed out that the assignment Marches to Linder was absolute in nature, reciting a valuable consideration, and that Linder represented to Scoville and Wren that he was "the owner of the judgment and a purchaser for value." We have also alluded to the sworn affidavit filed in an-

swer to the garnishment. The affidavit insofar as pertinent is as follows:

"Comes Now, Milton Linder, and being duly sworn, deposes and says:

"That he, Milton Linder, is the assignee of Louis S. Marches, plaintiff, in that certain action entitled Louis S. Marches vs Jack Tolmachoff, Case No. 69983, Superior Court, Maricopa County, Arizona. That said Louis S. Marches has no interest in said assignment, or in said named action. That aside from that assignment affiant is not the assignee of said Louis S. Marches. That affiant is not the assignee of Marches Packing Co., Inc. That said Louis S. Marches has assigned all of his interest in said above named case."

It should be understood that at this time no tender of issue had been made on the question of a fraudulent conveyance. It should also be understood that it was not until the actual hearing on the issue of the fraudulent nature of the conveyance that Milton Linder produced a second assignment from Marches to a woman by the name of Grace Thomas. In the light of the known facts at the time this answer was filed, the conclusion suggested by this legal jargon is that Marches had no interest in the assignment because Milton Linder owned it as assignee.

Both his statements and the implication of his sworn affidavit are contradicted by his later testimony at the hearing.

"The Court: May I ask the witness a question?

*   *   *   *   *   *

"The Court: Q. Then, as I understand your testimony, at the time you received the check for $16,000 plus, from Mr. Wren, you were receiving it only for the purpose of collection?

"Mr. Linder: A. That is correct."

The only possible inference is that the assignment from Marches to Linder was made pursuant to a scheme whereby Linder was to come to Arizona to collect the judgment for Marches while at the same time deluding Marches' Arizona creditors into believing that Linder had purchased the judgment and that Marches no longer had an interest in it. All of Linder's efforts up to and including the pleadings in the garnishment action were directed toward concealing the fact that Linder did not pay a valuable consideration for the judgment and was not in fact the real owner. The trial court's conclusion that the assignment Marches to Linder was made for the purpose and with the intent of hindering the Arizona creditors of Marches, and hence, by terms of the statute, fraudulent, finds ample support in the evidence.

Some further matters should be set forth in order to understand appellant's last argument. There were two hearings on this matter in the Superior Court. At the first, it was developed from Linder, as stated, that in addition to the assignment of the judgment from Marches to Linder, Marches subsequently but prior to the garnishment, made an additional assignment. This assignment was in writing and reads:

"Assignment

"For value received, I, Louis S. Marches, hereby assign to Grace Thomas, of Los Angeles, California, all my interest in the case of Marches vs. Tolmachoff, case number 69983 in the Superior Court of the State of Arizona, Maricopa County.

"This assignment is subject to that prior assignment to my attorney, Milton Linder. The amount of money due under this assignment is at present undetermined and will be subject to accounting between the undersigned and said Milton Linder at such time as any moneys are received under such judgment.

"Upon notice of this assignment my attorney, Milton Linder, is authorized to disburse such money received by him without any liability to himself.

"October 26, 1954
"(Signed) Louis S. Marches."

Based on this assignment, Linder returned to California and despite the garnishment, paid over to Grace Thomas the balance of the fund after first deducting his attorney fees and other charges. He now makes the point that this he had a right to do because the second assignment [Marches to Thomas] was supported by a valuable consideration. Linder testified in this respect that Marches had informed him that he, Marches, owed Grace Thomas a great deal of money. His legal position is that a debtor may prefer one creditor as against another or others, and that consequently Marches had a right to prefer Grace Thomas over the other nine judgment creditors in Arizona. In so urging, Linder tacitly assumes that his position must stand or fall upon the issue of whether the conveyance by Marches to Thomas was fraudulent within the meaning of the statute, § 44-1007, supra.

Ordinarily, it is the rule that the nominal owners of property must be made a party in garnishment proceedings before the court will decide the issue of the ownership of the funds. Valley Bank & Trust Co. v. Parthum, 47 Ariz. 496, 56 P. 2d 1342, on rehearing 48 Ariz. 87, 59 P.2d 335. This rule has no application in the instant case since by paying the fund to Grace Thomas she no longer had any property interest which could be destroyed by the adjudication of the Arizona court. In Potter v. Whitten, 170 Mo.App. 108, 155

S.W. 80, 88, the court commented on a similar situation to this effect:

"It is the duty of the garnishee to stand neutral in the litigation over the fund in his hands, to disclose all the information it has concerning the fund to the court, and to hold the fund in readiness to abide by the decision of the court. When he follows this course, he is entitled to the fullest protection; but when the garnishee, as in this case, abandons his position as a stakeholder and takes up the role of a litigant to such an extent that he pays out the funds to one of the parties and takes, in place of the fund, the chance of defeating the plaintiff, he must be content to accept the outcome of the battle fought out on the field he has chosen."

Here, Linder has chosen to answer the outcome on the issue of the validity of the assignment from Marches to Grace Thomas. We are thus brought face to face with the fraudulent nature of the Marches-Thomas assignment.

As to this, it is plain that the trial court could have examined it in the light of the evidence already developed relative to the first assignment. The suspicion is now strongly planted that the entire transaction is contaminated with unconscionable overreaching. Further testimony established that Marches and a person by the name of Grace Thomas lived together in Phoenix, Arizona, as man and wife, but that in fact Marches was then married to another woman. When Marches left Phoenix and went to California, Grace Thomas likewise left Arizona. The testimony from witnesses who knew Grace Thomas intimately disclosed that she had no property and no source from which she might have obtained any large sums of money. It is true the evidence did not establish absolutely that the Grace Thomas of the second assignment is the same Grace Thomas of Arizona, but the coincidence of names is too strong to be completely disregarded. Moreover, the physical description of the Grace Thomas of Phoenix, Arizona, readily fits that of the Grace Thomas of Los Angeles, California.

It was established at the trial that there were nine outstanding judgments against Marches in Maricopa County, Arizona, although the amounts thereof were not specified. This leads to a reasonable inference that Marches was in financial difficulties. This, in turn, when combined with the inference of the relationship of Marches to Grace Thomas and her impoverishment strongly suggests that the second assignment was made with the intent to hinder and delay Arizona creditors. If the assignment from Marches to Thomas was a bona fide transaction, there is no reason why it should not have been disclosed at the onset; and there is no real

reason why the collection of the judgment should not have been made by Grace Thomas as the assignee, the real party in interest. We cannot help but be impressed by the circumstance that it was not until Linder was compelled to admit that he was not the purchaser for value that the Grace Thomas assignment was brought in as a claim to defeat the Arizona creditors. We conclude that the inferences arising from the combination of these circumstances and others, not all set forth here, support a finding by the trial court that the second assignment [Marches to Thomas] was also made with the intent to hinder and delay creditors.

Appellant suggests that the appellees did not make a case because they did not establish that Marches was insolvent. The answer to this suggestion is that A.R. S. § 44–1007 quoted supra does not require insolvency of the judgment debtor to support a finding of a fraudulent conveyance. Since the evidence in the court below establishes that the fund collected and coming into Linder's hands was more than sufficient to satisfy his claim as the collecting agent and the claims of the appellees in full, there does not arise here any question of priorities.

Judgment of the court below is affirmed.

UDALL, C. J., and WINDES, PHELPS and JOHNSON, JJ., concur.