**Debra Sue CALLIES, Plaintiff,**

v.

**UNITED STATES, et al., Defendants.**

**No. CIV–00–0708–PHX–PGR.**

United States District Court,
D. Arizona.

Feb. 7, 2003.

Norris L. Ganson, Law Offices of Norris L. Ganson, Edmund D. Kahn, Law Offices of Edmund D. Kahn, Tucson, AZ, for Plaintiff.

R. Scott Clarke, Christopher R. Zaetta, U.S. Dept. of Justice Tax Division, Washington, DC, for Defendants.

## ORDER

ROSENBLATT, District Judge.

This is an action seeking recovery of damages related to the wrongful disclosure of information by the Internal Revenue Service (IRS). Pending before this Court are: (1) plaintiff Fraijo's Motion for Clarification (**doc. 145**) and (2) the class plaintiff's Motion for Approval of Attorneys' Fees (**doc. 148**).

### *Factual History*

During the month of September, 1999, Mr. Wewee, a Certified Public Accountant in Tucson, Arizona, began to submit requests to the IRS for transcripts of tax return information related to his clients. Mr. Wewee had proper authorization from his clients to request the information and wished to receive it to prevent any problems which might have resulted from "Y2K" computer failures at the IRS.

In response to Mr. Wewee's request for tax return transcripts relating to approximately 33 of his clients, the IRS provided printouts of transcripts to him containing tax return information related to those 33 clients as well as tax return information related to persons who are not (and were not) his clients. Mr. Wewee had no authority to receive tax return transcripts for individuals who were not his clients and, in some cases, only had limited authority to receive specific transcripts related to specified tax years' returns of his clients.

During the period from October 12, 1999 through February 2, 2000, Mr. Wewee received transcripts which he was not authorized to receive which related to 1,391 individuals and encompassed 2,862 tax years.

Representative plaintiffs are individuals who did not provide authority for Mr. Wewee to request or receive their tax return transcripts from the IRS, but whose tax return transcripts were nevertheless provided without request. There are 1,391 individuals whose transcripts were so provided to Mr. Wewee.

### *PROCEDURAL HISTORY*

The Complaint in this matter was filed on April 19, 2000. It alleged one Count, improper disclosure of tax information in violation of 26 U.S.C. § 6103 and § 7431. At the time the Complaint was filed, Plaintiffs sought actual damages to be proved at

trial, including punitive damages. The IRS answered the Complaint on July 7, 2000, admitting that the disclosures to Wewee were unauthorized, but denying that the plaintiffs suffered actual compensatory damages as a result of the disclosures, and denying that its conduct was "willful or the result of gross negligence." The IRS further admitted that the plaintiffs were entitled to statutory damages of $1,000.00 per person whose tax return information was wrongfully disclosed, reduced by the amount paid to any such individual in his or her administrative claim for damages. The plaintiffs later stipulated that they "did not suffer actual damages, as the term is used in 26 U.S.C. § 7431(c)."

The parties filed cross motions for summary judgment. In its motion, the IRS argued that in the absence of actual damages, punitive damages are not awardable. In its prayer for relief, the IRS requested the Court to render statutory damages in the amount $1,000.00 per class member.

Plaintiffs opposed the motion arguing actual damages are not necessarily a prerequisite to the recovery of punitive damages. In their cross-motion, the plaintiffs sought judgment in the amount of at least $24,877,650.00. This amount consisted of treble per plaintiff of statutory damages [1] and punitive damages in the amount of five times statutory damages.

On January 28, 2002 this Court granted the IRS's motion for summary judgment and denied plaintiffs' cross-motion. The Court reasoned that punitive damages could not be awarded in the absence of actual damages, under Arizona law. Moreover, the Court noted that treble damages were inappropriate since plaintiff failed to plead treble damages in the Complaint.

The judgment entered states,

IT IS ORDERED AND ADJUDGED that pursuant to the Court's order dated January 28, 2002, judgment is entered in favor of plaintiffs and against defendant in the amount of statutory damages provided in 26 U.S.C. 7431(c)(1)(A), less the amounts already paid by the United States to such plaintiffs.

On February 11, 2002, plaintiffs filed a "Motion for New Trial with Respect to Attorneys' Fees and Non–Taxable Costs." The Motion for New Trial essentially required the Court to consider who was the prevailing party. Pursuant to 26 U.S.C. § 7431(c)(3), when the United States is a defendant, a plaintiff is entitled to an award of attorneys' fees **"only** if the plaintiff is the prevailing party ..." (Emphasis added). Ultimately, this Court concluded that plaintiffs were not the prevailing party and denied their request for a new trial with respect to attorneys' fees was denied. The Court reasoned that the plaintiffs did not prevail because they were not awarded any form of relief requested in the Complaint. Specifically, the Complaint requested actual and punitive damages, which the Court determined, as a matter of law, were not applicable. The award of statutory damages was awarded only because the IRS made the request and conceded liability.

Presumably in an attempt to obtain some form of payment for attorneys' fees, class plaintiffs now request this Court to enforce a "charging lien" against the United States for funds earmarked to satisfy the judgment. As aptly noted by the IRS, plaintiff's counsel could have to pursue

---

**1.** Only in their Motion for Summary Judgment did plaintiffs claim that there were three wrongful disclosures, thus each class member was purportedly entitled to $3,000.00 (three disclosures at $1,000.00 per disclosure). There is no mention of three disclosures in the Complaint.

each client individually for payment of their contingency fee. Accordingly, they bring the pending "Motion for Approval of Attorneys' Fees and Costs."

### DISCUSSION

### A. Motion for Approval of Attorneys' Fees and Costs

Class counsel essentially asks this Court to do two things. First, approve the amount of attorneys' fees and costs (40% of $1,000.00 per class member). Second, require the IRS, to withhold the amount necessary to satisfy the class counsels' lien.

 With respect to the first issue, the reasonableness of the fee, the Court concludes that 40% is not reasonable under the circumstances. First, the retainer agreements themselves provide that each class member agrees to "pay my attorneys 33% of the amount of an settlement obtained if the case is settled any time prior to the termination of arbitration or trial. Should it be necessary to take the case through arbitration or trial before a recovery is obtained, my attorneys are to receive 40 % of the recovery as their fee."

This matter did not proceed to trial or Court ordered arbitration. There is nothing in the record to indicate that the parties participated in private arbitration proceedings. This matter was disposed of by motion. Accordingly, the Court is unable to justify approving attorneys' fees at a rate of 40%. At best, the class member agreed to be bound by the 33% rate. The agreed upon rate (33%) appears reasonable since the matter did not proceed to trial or arbitration.

 The second issue is more complicated. Apparently, the United States intends on sending the funds directly to the class members, instead of providing the funds to class counsel for deposit into his trust account for subsequent disbursement. This leaves counsel with the incon- venient task of obtaining 33% in fees plus each member's portion of costs from each individual member.

In anticipation of having to pursue fees and costs on an individual basis, class counsel requests the Court to find the existence of a "charging lien" and require the IRS to pay 33% of the judgment directly to class counsel. Based on the moving papers, the Court is not inclined to grant the request for several reasons.

 A charging lien is a device for securing payment of fees and sums advanced by the attorney. *Nat'l Sales & Serv. Co. v. Sup. Court of Maricopa Cty.*, 136 Ariz. 544, 545, 667 P.2d 738, 739 (1983). Charging liens attach to the funds or other property created or obtained by the attorneys efforts. *Id.*

Class counsel relies heavily on *Linder v. Lewis, Roca Scoville & Beauchamp*, to support their position. 85 Ariz. 118, 333 P.2d 286 (1958). The Court finds *Linder* unpersuasive.

*Linder* involved an action in garnishment wherein the garnisher alleged fraudulent conveyance of a judgment and Lewis, Roca, Scoville & Beauchamp intervened, asserting an attorneys lien. *Id.* at 121, 333 P.2d at 288. In *Linder*, the original plaintiff, Marches, obtained a judgment in a malicious prosecution action wherein he was represented by Lewis, Roca, Scoville & Beauchamp. *Id.* at 121, 333 P.2d at 288. Shortly after obtaining his judgment, Marches left the state and engaged Milton Linder, an attorney in California, to collect the judgment. *Id.* at 121, 333 P.2d at 288. In doing so, Marches assigned the full proceeds of the judgment ($ 15,000.00) to Linder. *Id.* at 121, 333 P.2d at 288. Lewis, Roca, Scoville & Beauchamp intervened in the garnishment proceedings and asserted a prior right to a portion of the proceeds of the judgment by virtue of an attorneys charging lien. *Id.* at 122, 333 P.2d at 289. The trial court ruled in favor

of Lewis, Roca, Scoville & Beauchamp. *Id.* at 122, 333 P.2d at 289.

The Arizona Supreme Court upheld the trial Court's ruling and concluded, "[w]here an attorney has a charging lien against a fund, a portion of the amount of his claim belongs to the attorney and cannot be assigned by the judgment creditor, and whoever receives it under an assignment is, in justice, to be considered as holding to the attorney's use and benefit." *Id.* at 123, 333 P.2d at 289.

The facts and holding of *Linder* are sufficiently distinguishable from the case at bench so as to render it unpersuasive. First, it is not the function of this Court to mitigate a **potential** dispute between lawyer and client. There is no indication the class members do not intend to pay the agreed upon amount to class counsel. In *Linder*, the judgment had actually been assigned to a third party. *Id.* at 121, 333 P.2d at 288. In this case no such an assignment has taken place. .

There is no case or controversy at this time. Assuming one arises, it is not likely that this Court would have jurisdiction to hear the matter since it involves a contract dispute between and attorney and his clients and the amount in controversy is less than $1,000.00 per class member.

Second, this Court is similarly not inclined to place a lien on the property of class members without the opportunity for a hearing or otherwise provide them with some form of due process. The Court would have to provide notice directly to the class members and deal with them individually since arguably a conflict of interest would exists between the class members and class counsel. Presumably, if class counsel is attempting to, or is successful at, placing a lien on the funds awarded, class counsel can no longer represent the class. If an actual conflict of interest does not exist, certainly the appearance of one does. With the heightened standards governing class actions, the Court declines to facilitate such a conflict, or potential conflict.

Overall, the Court finds that class counsel may attempt to obtain 33% of the award from each represented plaintiff, in addition to equally splitting the costs among the represented members. However, the Court denies the class counsel's request to enforce a charging lien for the reasons set forth above.

The Court is considerably concerned, however, with the manner in which the United States intends these funds to be disbursed. The United States does not provide any legal authority or reason for disbursing funds directly to the members. Moreover, plaintiffs have not challenged the disbursement of funds in this manner. Typically, funds are forwarded to counsel and placed in a trust account. The funds are then disbursed to the client. This Court is troubled that the United States will have direct communication with plaintiffs represented by counsel.

## B. Motion for Clarification

Edmund Kahn represents approximately twenty individual class members (hereinafter referred to as "individual plaintiffs") who chose not to employ class counsel Norris Ganson. Kahn opposed the IRS's earlier motion for summary judgment. In the Court's order of January 28, 2002, the Court chastised Kahn for participating in the litigation, reasoning he was denied the opportunity to act as class counsel. He now seeks clarification of that Order. The Court will consider the pending Motion for Clarification a Motion for Reconsideration.[2]

---

**2.** Mr. Kahn was not permitted to practice in this Court at the time his Motion for Clarification was filed because his license to practice law was suspended. Mr. Kahn's license was suspended for nonpayment of dues from Oc-

The Court's January 28, 2002 Order was incorrect insofar as Kahn should be permitted to appear and participate in the litigation on behalf of his individual clients, but was not, and is not permitted to act as class counsel. To that extent reconsideration is granted. In reconsidering the Motion for Summary Judgement with respect to these plaintiffs however, the Court's conclusion remains unchanged.

As noted above, the IRS filed a Motion for Summary Judgment arguing that as a matter of law, the plaintiffs were only entitled to statutory damages because punitive damages are not permitted, under Arizona law, absent actual damages. The Court agreed.

■ In responding to the IRS's Motion, the individual plaintiffs argued that it was the intent of Congress to equate statutory damages with actual damages. Essentially arguing that the two terms are interchangeable. Specifically, the individual plaintiffs argued, "[w]hen Congress established the minimum statutory damages of $1,000.00 for each act of unauthorized disclosure by the IRS, it is **equally clear** that Congress intended this damages amount to be the minimal actual damages for taxpayers in situations such as the present one." (Emphasis added).

The individual plaintiffs' argument is without merit for several reasons. Most importantly, the statute itself separately sets forth different provisions for the award of statutory damages and actual damages. 26 U.S.C. § 7431(c)(1)(A) and (B). In fact, section 7431(c)(1) only permits the recovery of statutory or actual damages, but not both. Obviously Congress did not intend for both types of damages to be considered the same.

Second, the individual plaintiffs do not provide any case law or references to the Congressional Record in support of their

tober 26, 2001 and not reinstated until July 1,

argument. They merely argue an alternative intent of Congress without any support and in contrast with the plain language of the statute.

In addition, the Court notes that the individual plaintiffs did not sign the October 4, 2001 Stipulation that no actual damages were suffered. This Stipulation was signed by class counsel, not by Mr. Kahn. The outcome still remains the same. The individual plaintiffs never argued or provided any evidence of actual damages. Their response to the Motion for Summary Judgment merely stated that actual damages should be the same as statutory damages; no mention was made that these plaintiff's did, in fact, suffer actual damages.

Accordingly, to the extent that clarification is still needed, the Court finds that the Motion for Summary Judgment with respect the individual plaintiffs is granted in favor of the IRS.

IT IS ORDERED that the class plaintiffs' Motion for Approval of Attorneys' Fees (**doc. 148**) is GRANTED, in part, and DENIED, in part. It is granted to the extent that the Court finds the fee of 33% reasonable. It is denied with respect to the request for a charging lien.

IT IS FURTHER ORDERED that the individual plaintiffs' Motion for Reconsideration (**doc. 145**) is GRANTED.

IT IS FURTHER ORDERED that the Court's order of January 28, 2002 (**doc. 136**) is VACATED with respect to page 7–8 lines 24–16 and page 9 line 1–6.

IT IS FURTHER ORDERED that summary judgment (**doc. 118**) is granted in favor of the I.R.S. and against those individual plaintiffs represented by Edmund Kahn.

2002.

IT IS FURTHER ORDERED that a hearing is set for **Monday, March 10, 2003 at 1:30 p.m.,** to address the disbursement of the funds.

IT IS FURTHER ORDERED that the I.R.S. is not to disburse any funds to plaintiffs until the Court so orders.