607 F.2d 1243
 27 UCC Rep.Serv. 536
 In the Matter of SOUTHWEST RESTAURANT SYSTEMS, INC., an
Arizona Corporation, dba Pinnacle Peak Patio.
John EVANS, Trustee-Appellee,
v.
STOCKTON & HING, Creditor-Appellant.
Harvey R. McELHANON, Jr., and Doreen T. McElhanon, his wife,
Plaintiffs- Appellants,
v.
Wallace PERRY, Receiver, Defendant,
and
Henderson Stockton and Robert Ong Hing dba Stockton & Hing,
Defendants- Appellees.
 Nos. 77-3613, 77-3229.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 5, 1979.
Rehearing Denied in No. 77-3613 Oct. 4, 1979.
 
 Stockton & Hing, Robert Ong Hing, Phoenix, Ariz., on brief, for creditor-appellant and for defendants-appellees; Ronald E. Warnicke, Treon, Warnicke, Dan & Roush, Phoenix, Ariz., argued, for creditor-appellant and for defendants-appellees.
 Jack E. Evans, Phoenix, Ariz. on brief, for plaintiffs-appellants.
 Powell B. Gillenwater, Phoenix, Ariz., argued and on brief, for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before TUTTLE,* DUNIWAY and ELY, Circuit Judges.
 ELY, Circuit Judge:
 
 
 1
 The subject cases have been consolidated on appeal. For purposes of clarity, however, the facts of each cause are outlined separately, and the resolution of the issues presented has been, where appropriate, similarly divided.
 
 FACTS
 No. 77-3613
 
 2
 Prior to 1975, Charles G. Harris ("Harris"), John H. Greer, Jr. ("Greer"), and Harvey G. McElhanon, Jr. ("McElhanon") were each 1/3 owners of Southwest Restaurant Systems, Inc. ("the debtor corporation").[1] In 1972, Harris and Greer first secured the services of the law firm of Stockton & Hing with respect to an arbitration hearing. The law firm was paid in full for its services shortly after the hearing.
 
 
 3
 In May of 1973, Harris and Greer retained Stockton & Hing for other legal proceedings. In September of 1973, with an unpaid balance of approximately $10,000 owing to the law firm, Mr. Robert Ong Hing instructed Harris and Greer to deliver to the law firm their stock certificates, Nos. 3 and 2, respectively, which represented their ownership shares in the debtor corporation. These certificates were, in fact, deposited with Stockton & Hing with the apparent understanding that the stocks would be held as security for payment of attorneys' fees, both owing and to be incurred in the future. The certificates, however, were never endorsed by Greer or Harris. At the present time, Stockton & Hing claim that Harris and Greer owe the law firm in excess of $67,000 for legal services rendered.
 
 
 4
 On October 14, 1975, the Bankruptcy Court approved the Trustee's Plan of Reorganization for the debtor corporation under Chapter X. The sale and distribution Order provided that after payment of claims and administrative costs, any sums remaining would be distributed pro rata to the stockholders, less any amounts found due the corporation from the stockholders by reason of loans, indebtedness, or liabilities. The Order also provided that any "liens on stockholder interest that existed prior to cancellation of said stock shall, if valid and enforceable against the Trustee, all attach . . . to the proceeds of said escrow and other assets in the hands of the Trustee . . . ."
 
 
 5
 The debtor corporation secured a judgment against Greer in the amount of $350,000 in December of 1975. Judgment against Harris, also in favor of the corporation, was rendered in March, 1977, for a sum in excess of $455,000. Neither judgment was satisfied.
 
 
 6
 In May, 1977, the Bankruptcy Court authorized the interim distribution to stockholders pursuant to the October Order of sale and distribution. Because the unsatisfied judgments against Harris and Greer exceeded their pro rata shares as shareholders, these two received no distribution proceeds. Stockton & Hing objected, contending that the law firm should receive 2/3 of the distribution proceeds because of its lien rights in the Harris and Greer stock interests. The Bankruptcy Court rejected the contention that the law firm's lien was not subject to the offsets against Harris and Greer. On August 19, 1977, the District Court affirmed the Bankruptcy Court, holding that Stockton & Hing's interest was an attorney's retaining lien that was subject to the above-described offsets. Stockton & Hing appeal.
 
 No. 77-3229
 
 7
 On October 13, 1973, McElhanon obtained a judgment of $200,000 against Harris based on a claim of debt. Very shortly after entry of judgment, and apparently on advice of Stockton & Hing, Harris sold his stock in the debtor corporation to Greer. To permit this sale, Stockton & Hing momentarily released its lien on Harris' stock. Stock certificate No. 3, representing Harris' original ownership, was marked "void" on its face, and the debtor corporation was asked to issue a new stock certificate in Greer's name. The company complied, issuing certificate No. 4. This new stock certificate and the "voided" No. 3 certificate were retained by Stockton & Hing.
 
 
 8
 Greer executed a promissory note in the amount of $12,500 payable to Harris. Harris promptly assigned the note to Stockton & Hing. Harris also assigned to Stockton & Hing his entire interest under the agreement between Harris and Greer relating to the sale of the stock. On October 20, 1973, McElhanon, in an attempt to satisfy his judgment, caused a writ of execution to be issued and writs of garnishment to be served on Harris and the debtor corporation. On November 16, 1973, writs of garnishment were also served on Robert Ong Hing, Stockton & Hing, and Greer. All of the garnishees filed verified answers denying that Harris owned any stock in the debtor corporation and asserting that Harris had previously sold his stock to Greer.
 
 
 9
 On November 14, 1973, Harris and Greer executed a promissory note on behalf of themselves, individually, and also on behalf of the debtor corporation, payable to the order of Stockton & Hing in the amount of $25,000.
 
 
 10
 On December 5, 1973, Stockton & Hing surrendered possession of both Greer stock certificates (Nos. 2 and 4) to the Clerk of the Maricopa County Superior Court in an attempt to secure a supersedeas bond. The court and all concerned parties were given notice that the law firm claimed a lien on the stock, and the certificates were surrendered only on condition that the supersedeas bond be approved. Because the bond was not approved, the stock was redelivered to Stockton & Hing.
 
 
 11
 On May 14, 1975, the Bankruptcy Court found that the October, 1973, sale of stock between Harris and Greer was a fraudulent conveyance made with the intent to defraud or hinder McElhanon in the collection of his judgment. The attempted transfer was held to be void and of no force and effect. The District Court adopted the Bankruptcy Court's findings and conclusions on May 27, 1975.
 
 
 12
 Meanwhile, on May 16, 1975, McElhanon and his wife, Doreen, filed a Complaint to recover property and determine the validity, priority, and extent of lien. Inasmuch as Harris had filed a Petition for Bankruptcy in February of 1975, the McElhanon Complaint originally named the Receiver of the bankrupt as defendant. The McElhanons filed an Amended Complaint on June 3, 1975, naming the Receiver, Robert Ong Hing, Henderson Stockton, and the law firm of Stockton & Hing as defendants. Stockton & Hing answered and filed a counterclaim and crossclaim for attorneys' fees, asserting priority of its lien on Harris' stock in the debtor corporation.
 
 
 13
 On January 17, 1977, the Bankruptcy Court entered summary judgment in favor of the McElhanons. The court concluded that when the Harris stock certificate (No. 3) was marked void on its face in October, 1973, the certificate "became absolutely non-negotiable and ceased to represent Harris' stock interest in Southwest Restaurant Systems, Inc." The court further concluded that Stockton & Hing held only a retaining lien as to the voided certificate. Thus, the court held that the retaining lien had no effect on Harris' stock interest and that McElhanon acquired a perfected superior lien on Harris' interest by reason of the writs of garnishment served upon Harris and the debtor corporation.
 
 
 14
 The Federal District Court reversed the Bankruptcy Court on June 30, 1977. It held that the writs of garnishment did not create a superior lien to Stockton & Hing's lien because the stock certificate was not actually seized by the officer making the attachment. The District Court also held that Harris' stock could not be deemed "to have been constructively surrendered to the issuer for purposes of determining the validity of the attempted garnishment." The court reasoned that Arizona's adoption of Article 9 of the Uniform Commercial Code represented a policy decision in favor of allowing creditors, including one such as Stockton & Hing, to obtain protectable security interests. The McElhanons appeal.
 
 ANALYSIS
 
 15
 The characterization of Stockton & Hing's interest with respect to the stock in the debtor corporation is a key issue common to both appeals. Throughout these proceedings, the law firm of Stockton & Hing has contended that its interest in Harris' and Greer's stock is a perfected security interest under Article 9 of the Uniform Commercial Code, as adopted by Arizona. The law firm claims that its security interest was perfected in September of 1973 when the stock certificates were delivered by Harris and Greer to the firm. Stockton & Hing points out that a security interest may be perfected in Arizona by taking possession of the collateral. See A.R.S. § 44-3126.
 
 
 16
 We reject the contention, however, that Stockton & Hing's interest in the stock constitutes a perfected security interest under Article 9. Section 9-104(c) A.R.S. § 44-3104(3) specifically excludes common law liens for services from the scope of Article 9:
 
 
 17
 This Article does not apply . . . (t)o a lien given by statute or other rule of law for services or materials . . . .
 
 
 18
 Traditionally, attorneys' liens are of two types: specific charging liens, and general possessory or retaining liens. A charging lien attaches to the particular fund or other property created or secured through the attorney's efforts. A possessory or retaining lien, on the other hand, enables the attorney to retain a client's records or other property until the client pays for all of the legal fees owing to the attorney. See Restatement of Security § 62(b) and Comment (j); Restatement 2d of Agency § 464(b); Adams, George, Lee, Schulte & Ward, P.A. v. Westinghouse Electric Corp., 597 F.2d 570 (5th Cir. June 22, 1979). Cf. In re Diplomat Electric, Inc., 499 F.2d 342, 348 (5th Cir. 1974) (charging lien under Florida law); United States v. Fidelity Philadelphia Trust Co., 459 F.2d 771, 774 (3d Cir. 1972) (charging lien under Pennsylvania law); In re Browy, Brannon v. Gay, 527 F.2d 799, 801 (7th Cir. 1976) (retaining lien under Illinois law).
 
 
 19
 Arizona case law has focused exclusively upon attorneys' charging liens. See, e. g., Linder v. Lewis, Roca, Scoville & Beauchamp, 85 Ariz. 118, 333 P.2d 286 (1958); Richfield Oil Corp. v. La Prade, 56 Ariz. 100, 105 P.2d 1115 (1940). While Arizona law has not addressed the question of attorney retaining liens, we presume that Arizona will follow the Restatement. Smith v. Normart, 51 Ariz. 134, 143, 75 P.2d 38, 42 (1938). As indicated above, the Restatement recognizes an attorney's general possessory lien, as security for amounts due, on papers and other chattels that come into an attorney's possession. Thus, we find that Stockton & Hing's interest in the stock certificates is properly characterized as an attorney's retaining lien. Except under circumstances not here applicable, the possessor lienor generally "has only a privilege of retention without the power of sale and without the privilege of foreclosure . . . ." Restatement of Security § 72(1) and Comment a.
 
 No. 77-3613
 
 20
 As noted above, the Bankruptcy Court cancelled the outstanding stock of the debtor corporation in October of 1975, and substituted a pro rata right to share in the distribution proceeds, subject to offset. According to the Restatement of Security § 66 Comment a: "Where . . . as a result of action by public authority a chattel is substituted in the hands of the lienor for a chattel upon which a lien exists, the lienor has the privilege of retaining the substituted chattel." Thus, we agree with the District Court's conclusion in this case that "when the October 14th order cancelled the debtor corporation's stock, Stockton & Hing retained a possessory lien on the new bundle of rights accorded Greer and Harris."
 
 
 21
 It is clear, however, that Greer and Harris had no right to moneys in the distribution, for their pro rata shares were more than offset by the unsatisfied judgments the debtor corporation claimed against them. There is little dispute that the Bankruptcy Court was authorized to alter the rights of the stockholders under Chapter X reorganization plans. 11 U.S.C. § 616(1). Additionally, there is no question but that the court could offset the judgments of the debtor corporation against Greer and Harris in ordering the distribution. Because Stockton & Hing's retaining lien does not give the law firm an interest greater than that of Greer and Harris, we affirm the District Court's conclusion that the law firm was not entitled to any part of the distribution proceeds.No. 77-3299.
 
 
 22
 In this proceeding, the District Court, reversing the Bankruptcy Court, held that McElhanon did not perfect a security interest in Harris' stock superior to Stockton & Hing's interest when McElhanon caused writs of garnishment to be served upon Harris and the debtor corporation in October of 1973. We reverse.
 
 
 23
 We agree with the Bankruptcy Court's determination that Harris' stock certificate became non-negotiable and ceased to represent Harris' stock interest when the certificate was voided on its face in October, 1973. Stockton & Hing's retaining lien covered, therefore, a voided certificate that ceased to be of value.
 
 
 24
 The law firm contends, however, that its possession of certificate No. 4, issued by the debtor corporation to Greer, gives the law firm a continuing interest in the stock. This argument must also be rejected. The Bankruptcy Court's decision in May of 1975 clearly declared the attempted transfer between Harris and Greer to be void and of no force and effect. Thus, certificate No. 4 was, in effect, rendered non-negotiable and without value by the court's decision.
 
 
 25
 A security that has been surrendered to the issuer may be attached at the source, I. e., at the issuer's office. See U.C.C. § 8-317 (A.R.S. § 44-3032). The District Court intimated that Harris' stock might be deemed "to have been constructively surrendered to the issuer for purposes of determining the validity of the attempted garnishment" were it not for the adoption of Article 9 in Arizona representing a policy decision in favor of allowing creditors to obtain protectable security interests. It is now evident, however, that Stockton & Hing never possessed an Article 9 security interest with respect to stock in the debtor corporation. And, after certificate No. 3 was voided in October, 1973, and the attempted Harris-Greer stock conveyance was declared to be void and without legal effect, Stockton & Hing ceased to possess a meaningful retaining lien on Harris' stock interest. In these circumstances, therefore, there is no conflict between the important policies of the Uniform Commercial Code, adopted by Arizona, and the finding that Harris' stock was constructively surrendered to the debtor corporation for purposes of determining the validity and effect of McElhanon's writs of garnishment.
 
 
 26
 By causing a writ of garnishment to be served upon the debtor corporation, McElhanon acquired an inchoate lien. See Kuffel v. United States,103 Ariz. 321, 441 P.2d 771 (1968). We note the viable status of an inchoate garnishment lien in bankruptcy when established more than four months before the filing of bankruptcy. See 4 Collier on Bankruptcy § 67.10, at 131-32 (14th ed. 1971).
 
 CONCLUSION
 
 27
 In light of the foregoing, we affirm the District Court's judgment in Evans v. Stockton & Hing, No. 77-3613.
 
 
 28
 We reverse the District Court's judgment in McElhanon v. Perry, No. 77-3229, and remand that cause for proceedings consistent with this Opinion.
 
 
 29
 SO ORDERED.
 
 
 
 *
 The Honorable Elbert P. Tuttle, Senior United States Circuit Judge, Fifth Circuit, sitting by designation
 
 
 [1]
 Relief was originally sought in July of 1974 under Chapter XI of the Bankruptcy Act. 11 U.S.C. § 701 Et seq. Upon motion of the Receiver, the Bankruptcy Court ordered that the proceedings be converted from a Chapter XI arrangement to a reorganization under Chapter X of the Act. 11 U.S.C. § 501 Et seq