**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

In re:                              )    BAP No. EC-15-1311-JuKuMa
                                    )
SHAVER LAKEWOODS DEVELOPMENT         )    Bk. No.  11-62509
INC.,                               )
                                    )    Adv. No. 14-01005
                Debtor.             )
_____     )
HENRY DORAME NUNEZ,                  )
                                    )
                Appellant,          )
                                    )
v.                                  )    **M E M O R A N D U M**[*]
                                    )
RANDELL PARKER, Chapter 7            )
Trustee,                            )
                Appellee.           )
_____     )

Argued and Submitted on October 20, 2016
at Sacramento, California

Filed - November 29, 2016

Appeal from the United States Bankruptcy Court
Eastern District of California, Sacramento

Honorable Fredrick E. Clement, Bankruptcy Judge, Presiding

_____

Appearances:    Appellant Henry Nunez argued pro se; Lisa Anne
                Holder of Klein Denatale Goldner Cooper Rosenlieb
                & Kimball, LLP argued for appellee Randell
                Parker, Chapter 7 Trustee

_____

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Before: JURY, KURTZ, and MARTIN,[**] Bankruptcy Judges.

Appellant Henry Nunez ("Nunez") appeals from the bankruptcy court's judgment in favor of the chapter 7[1] trustee Randell Parker ("Trustee") determining (1) Nunez's attorney's lien, which was purportedly secured by real property, was invalid under Rule 3-300 of the California Rules of Professional Conduct, (2) Nunez does not hold an equitable lien on the real property, and (3) Nunez's allowable attorney fees and costs are limited to pre-petition services that benefitted the debtor's bankruptcy estate.

For the reasons stated below, we AFFIRM.

## I.  FACTS

Shaver Lakewoods Development, Inc. ("Shaver" or "Debtor") was formed to develop a residential subdivision.  Gordon Loo and Angela Rodriguez each held a 50 percent ownership interest.  Loo, Angela,[2] and Robert Rodriguez, the husband of Angela, served as members of the board of directors.  Loo was the president, Angela was involved in the daily operations, and Robert brought extensive experience in development.

In early 2000, Shaver purchased land in Shaver Lake, California, which was subdivided into twenty lots, fifteen of

---

[**] Hon. Brenda Martin, United States Bankruptcy Judge for the District of Arizona, sitting in designation.

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Bankruptcy Procedure.

[2] For ease of reference, we identify the members of the Rodriguez family by their first names.  No disrespect is intended.

-2-

which were fully developed, and five of which remained partially developed (the "Real Property"). Sierra Pines at Shaver Lake Homeowners Association ("Sierra Pines") was created for marketing, managing, and selling the lots.

On June 8, 2009, Sierra Pines and various individual homeowners (the "plaintiffs") brought a·construction defect lawsuit against Shaver·and Robert for breach of implied warranty, strict liability, and negligence in the Fresno County Superior Court (the "State Court Action").

On October 2, 2009, in satisfaction of preexisting debt, Shaver deeded the Real Property to Angela and Loo (the "Transferred Lots").[3] On August 19, 2010, the plaintiffs in the State Court Action filed an amended complaint which, in relevant part, added Loo and Angela as defendants and added causes of action for actual fraudulent transfer, constructive fraudulent transfer, and constructive trust. On August 27, 2010, the plaintiffs recorded a lis pendens against the Transferred Lots.

### Nunez Fee Agreement Meetings

As a result of the State Court Action, Shaver, Loo, Robert, and Angela retained Nunez, a Fresno based attorney. The parties and Nunez met on two occasions, in June 2010 and January 2011, to discuss their retention of Nunez.

---

[3] The bankruptcy court judge found that on November 7, 2002, Loo loaned Shaver $250,000 and in return received a promissory note and a security agreement, but not a deed of trust. Likewise, the bankruptcy judge found that on October 18, 2005, Angela loaned Shaver $282,000 and in return received a promissory note and a security agreement, but not a deed of trust.

## The June 2010 Meeting

In June 2010, Loo and Robert, without Angela, met with Nunez (the "June 2010 Meeting"). They discussed the dispute, the possibility of defenses, and the type of fee arrangement. Specifically, the record indicates that Nunez presented Loo and Robert with a standard pre-printed retainer agreement. The agreement had blank spaces that could be completed in a handwritten fashion with information pertinent to identifying and describing the clients, the dispute, estimated fees, retainers, and dates and signatures of the parties. Nunez filled in the first few lines on the blank portions of this agreement, which included: the client names of Loo, Robert, and Angela; the client addresses; a description of the Shaver case name and number; authority for Nunez to act; and an indication that the fees were unknown but a retainer of $2,500.00 was required. The judge later found this meeting did not result in an agreement for payment of fees.[4] Nunez agreed to work on the case on an interim basis, solely based on his long-standing professional association with Robert Rodriguez, a former client.

## The January 2011 Meeting

Six months later, on January 14, 2011, Angela, Loo, and Robert met with Nunez (the "January 2011 Meeting"). The record indicates that on that date Nunez on his own behalf and Loo, Robert, and Angela, both individually and on behalf of Shaver,

---

[4] The trial judge based this finding on (1) Angela was not present, (2) the retainer agreement was not signed, and (3) the parties did not agree on the details of the retention of Nunez, as Nunez repeatedly resisted the demands by Loo and Robert to proceed on a contingency fee basis.

-4-

executed a signed retainer agreement. Although the first few lines from the agreement as marked up at the June 2010 Meeting remained, the parities added several additional terms. Most significantly, the new terms included a purported lien in favor of Nunez which was to be secured by the Transferred Lots. The agreement, in relevant part, provided:

> The parties agree that the fee shall not exceed 1/3 of the value of lots owned by clients and attorney shall have the option to accept 1/3 of value of lots recovered. The lien shall apply to these lots.
> ...
> Clients hereby grants [the Nunez Firm] a lien on any/and all claims or causes of action that are the subject of [] representation under this Agreement. The lien will attach to any recovery you may obtain whether by Arbitration award, judgment, settlement, or otherwise and on the real property lots release of lis pendens and recovery of lots for clients.
> ...
> The undersigned waive any conflict of interest which may exist as a result of representation of all parties.

Of the species of fee agreements recognized in California, the trial judge later found that the agreement was a "hybrid," where there was an hourly component to the agreement that was capped and the clients held an option to provide Nunez with one-third of the value of the lots. Said another way, Nunez was entitled to an hourly fee without regard to whether he was successful in resolving the dispute with Sierra Pines, and the hourly fees and one-third valuation were mere measuring devices for how much Nunez would be paid.

On January 20, 2011, and on March 18, 2011, Nunez made two attempts in the Fresno County Superior Court to expunge the lis pendens. Each attempt was unsuccessful.

## The Bankruptcy Proceedings

On November 17, 2011, Shaver filed a petition under Chapter 7 of the Bankruptcy Code (the "Petition Date").[5] In addition to representing Shaver, Loo, Angela, and Robert in the State Court Action, Nunez represented them in their respective bankruptcy proceedings as well.

In Amended Schedule B, Debtor listed a contingent claim for fraudulent transfer of the Transferred Lots valued at $15,000.00. After negotiations by Trustee, on April 26, 2012, the bankruptcy court approved a settlement agreement under Section 9019(a) of the Bankruptcy Code between Trustee, Angela, Loo, and Nunez (the "Compromise Agreement"). The Compromise Agreement provided, in relevant part, that Loo and Angela would reconvey the Transferred Lots to Debtor's bankruptcy estate and that Nunez could file a proof of claim for the purported lien secured by the Transferred Lots. On April 20, 2012, Nunez filed a proof of claim asserting a secured claim for unpaid fees and costs in the amount of $88,501.81.

On October 26, 2012, Trustee negotiated with Sierra Pines to release the lis pendens against the Transferred Lots which Trustee had obtained. On November 26, 2012, the bankruptcy court entered an order authorizing the sale of the Transferred Lots free and clear of the liens of Nunez, Angela, and Loo. Under the terms of the order, the liens were to attach to the proceeds with the same validity, priority, and amount as they

---

[5] Loo and Robert also filed for bankruptcy. In total, there were five bankruptcy filings by parties related to the State Court Action.

attached to the Transferred Lots. The net proceeds from the sale were $210,540.17.

On January 6, 2014, Trustee filed an adversary proceeding seeking declaratory relief from the bankruptcy court that Nunez's lien was not secured against the Transferred Lots and requesting the court to determine the amount of Nunez's claim. On February 6, 2014, Nunez filed an answer and counterclaim for quiet title based on his lien, specific performance, and declaratory relief.

The bankruptcy court held a three day trial. On August 26, 2015, the court issued its oral ruling. After stating detailed findings of fact and conclusions of law, the bankruptcy court concluded that Nunez did not have a secured claim against the Transferred Lots because Nunez did not comply with Rule 3-300 of the California Rules of Professional Conduct ("Rule 3-300"). The court found based on the words of the retainer agreement and the testimony at trial that the fee agreement was a "hybrid" and therefore, under relevant case law, Nunez's lien was invalid and unsecured. Adopting the Trustee's methodology, the bankruptcy court then determined that Nunez was allowed an unsecured claim for fees and costs based on his pre-petition representation of the Debtor in the amount of $8,535.38, which was to be paid by the estate. Nunez timely appealed to this court.

## II.   JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2). We have jurisdiction under 28 U.S.C. § 158.

# III. ISSUES

A. Whether the bankruptcy court erred by concluding that Nunez did not hold an enforceable lien on the Transferred Lots under Rule 3-300 of the California Rules of Professional Conduct.

B. Whether the bankruptcy court erred by concluding that Nunez did not hold any equitable liens on the Transferred Lots.

C. Whether the bankruptcy court abused its discretion in calculating Nunez's allowed attorney's fees and costs in the amount of $8,535.38.

# IV. STANDARDS OF REVIEW

In reviewing decisions of the bankruptcy court, the Panel reviews legal conclusions de novo, factual findings for clear error, and mixed questions of law and fact de novo. Murray v. Bammer (In re Bammer), 131 F.3d 788 (9th Cir. 1997); In re Jorgensen, 66 B.R. 104, 109 (9th Cir. BAP 1986). A finding of fact is clearly erroneous when, after reviewing the evidence, we are left with the definite and firm conviction that a mistake has been committed. In re Contractors Equip. Supply Co., 861 F.2d 241, 243 (9th Cir. 1988).

We review a bankruptcy court's decision to award attorney's fees and cost for abuse of discretion. See, e.g. Cal. Emp. Dev. Dep't v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147 (9th Cir. 1996). Under the abuse of discretion standard of review, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). If the bankruptcy court identified the

correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. (internal quotation marks omitted).

## V. DISCUSSION

## A. Motion to Strike

During the pendency of this appeal, Trustee filed a motion to strike portions of Nunez's opening brief and excerpts of record. Nunez included in the excerpts declarations from summary judgment motions, judicially noticed documents, and findings of facts and conclusions of law, all that relate to prior filings with the bankruptcy court, which were not presented at trial or admitted in the trial record. Nunez argues that the evidence only needed to be presented at some point to the trial court to be considered part of the excerpts of record. Thus, because they were on the court's docket, they were presented to the trial court.

In making this argument, Nunez essentially seeks to introduce new evidence on appeal. The summary judgment motion and other documents were not introduced into the evidentiary record at trial. Accordingly, because the material Nunez included in the excepts was not admitted into the trial record, it would be improper for this Panel to consider the material outside the record. See Heath v. Helmick, 173 F.2d 156 (9th Cir. 1949). Therefore, the challenged exhibits are stricken. We likewise accept Trustee's redacted brief, which eliminated

any reference to the material not in the trial record in Nunez's opening brief filed with the Panel.

## B.    Secured claims against the estate

Nunez argues that his retainer agreement created a secured claim against the Shaver bankruptcy estate.  The bankruptcy court denied that security for reasons stated above.  We address those reasons in turn.

### 1.    Attorney's Lien

Nunez argues that he has a secured attorney's charging lien based on the January 2011 retainer agreement which need not comply with the ethical obligations in Rule 3-300.  The record indicates that in making its determination, the bankruptcy court found that there are four species of retainer agreements: hourly, fixed, contingent, and true retainer.  After eliminating each type of agreement, the court characterized the January 2011 retainer agreement as a "hybrid."[6]  On appeal, Nunez does not dispute this characterization, leaving only the issue of whether Nunez's fee agreement required compliance with Rule 3-300 before the Panel.

State law governs the nature, extent, and validity of a lien in a bankruptcy proceeding. Diamant v. Kasparian (In re S. Cal. Plastics, Inc.), 165 F.3d 1243, 1248 (9th Cir. 1999).  The parties do not dispute that California law governs the retainer agreement because undisputably it was entered into in California.

---

[6] The bankruptcy court based its determination on there being an hourly component with an option to pay Nunez one-third of the value of the Transferred Lots.

-10-

Under California law, there are two types of attorneys' liens: specific charging liens and general possessory liens. Evans v. Stockton & Hing (In re Sw. Restaurant Sys., Inc.), 607 F.2d 1243, 1246 (9th Cir. 1979). "A charging lien attaches to the particular fund or other property created or secured through the attorney's efforts," whereas, a possessory lien "enables the attorney to retain a client's records or other property until the client pays for all of the legal fees owing to the attorney."[7] Id. A charging lien may be used to secure either hourly fee or a contingency fee. Cetenko v. United Cal. Bank, 30 Cal.3d 528 (1982).

In most jurisdictions, a charging lien may be created either by contract or by operation of law. Fletcher v. Davis, 33 Cal.4th 61, 62 (2010). Unlike most other jurisdictions, under California law an attorney's charging lien to secure payment for legal services can only be created by contract of the parties. Carroll v. Interstate Brands Corp., 99 Cal. App. 4th 1168, 1172 (2002).

For most charging liens, California attorneys must satisfy the ethical obligations found in Rule 3-300 or the lien will be invalid. See Fletcher, 33 Cal.4th 61. Rule 3-300, an ethics rule entitled "Avoiding Interests Adverse to a Client," provides:

> A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been

---

[7] Nunez does not argue and the facts do not suggest that the lien he had was a possessory lien.

-11-

satisfied:

(A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and

(B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and

(C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition.

Cal. R. Prof. Conduct 3-300.

It is well-established that an attorney who secures payment of fees by taking a lien on the property of a client creates an "adverse interest" and must comply with the ethical obligations in Rule 3-300. See Hawk v. State Bar, 45 Cal.3d 589 (1988) (holding that an attorney who had secured payment of fees with a note secured by a deed of trust on a client's property had to comply with then-current Rule 5-101 (now Rule 3-300); see also Brokway v. State Bar, 53 Cal.3d 51 (1991); Fletcher, 33 Cal.4th at 64; Comments to Rule 3-300. In this case, Nunez billed at an hourly rate and took a security interest in the Transferred Lots, which prior to the filing of bankruptcy, belonged to one of his clients, either Shaver or Loo and Angela. Nunez's attorney's fees were therefore to be secured by property of his clients, an acquisition that creates an adverse interest under California law. Id.

Nunez argues that Plummer v. Day/Eisenberg, 184 Cal.App. 4th 38, 41 (2010) applies to his hybrid fee agreement and therefore he need not comply with Rule 3-300. We disagree. In Plummer, the retainer agreement was a pure contingency fee

agreement, which provided the attorney with a lien on the client's prospective recovery in the same proceeding. Id. at 38. The court, adopting the reasoning of the California State Bar, concluded that a pure contingency fee agreement does not create an adverse interest to the client within the meaning of Rule 3-300. Id.; Cal. Eth. Op. 2006-170 at *6. Plummer is easily distinguishable because Nunez's fee agreement was not contingent upon the outcome of resolving the State Court Action, which he plainly concedes.[8] Moreover, his fees were not contingent at all, instead billed at an hourly rate whether or not he won for his clients. Therefore, Plummer cannot apply on these facts to exempt Nunez's compliance with the ethical obligations in Rule 3-300.

Although we need not make such determination to reach a decision in this case, we doubt that Nunez held a "charging lien" at all. A charging lien attaches to a particular "recovery" or "fund." Fletcher, 33 Cal.4th at 61; In re Sw. Restaurant Sys., Inc., 607 F.2d at 1246; Cetenko v. United Cal. Bank, 30 Cal.3d at 528. Nunez's lien secured hourly fees but the fees were not contingent on obtaining a judgment. Therefore, his lien could not attach to any conceivable "recovery" or "fund" and was unperfected, as it was never recorded. In any case, because the lien was not a pure continency charging lien, compliance with Rule 3-300 was

---

[8] Even if Plummer applied to this retainer agreement, Nunez still did not "recover" the Transferred Lots. Nunez was unsuccessful in his attempts to expunge the lis pendens. It was Trustee who avoided the lis pendens and recovered the Transferred Lots in the Compromise Agreement.

required.  See Plummer, 184 Cal.App. 4th at 38.  The bankruptcy court did not err in determining that Rule 3-300 compliance was mandatory.

**2.  Compliance with Rule 3-300**

After three days of trial, the bankruptcy court made factual findings that Nunez did not comply with Rule 3-300.  We can only disturb these findings if they were clearly erroneous.  See Joseph F. Sanson Inv. Co. V. 268 Limited (In re 268 Limited), 789 F.2d 674 (9th Cir. 1986).

Under the first requirement of Rule 3-300, in which the terms must be "fair and "reasonable" and "fully disclosed" to the client, the bankruptcy court found that the terms were not fair or reasonable.  The court noted three problems.  First, the costs of litigation and sale of the recovered lots are not described in the fee agreement.  Second, Nunez did not discuss how his lien might impact settlement discussions if a disagreement resulted between Nunez on the one hand and Loo, Robert, Angela, or Shaver on the other.  Last, and most significant, was the actual conflict of interest in representing both the transferor and transferee in the defense of a fraudulent transfer action.  Clients Loo and Angela agreed to place liens on the Transferred Lots that were titled in their names in exchange for Nunez's representation of themselves and Shaver, the entity which made the transfer.  Shaver did not have the same interest in the State Court Action as Loo and Angela.

Under the second requirement, which requires there must be both a written notification of the right to seek advice by outside counsel and a reasonable opportunity to obtain such

-14-

advice, the bankruptcy court found that neither was present. The court first found that the agreement was not reviewed by an independent lawyer who was not affiliated with Nunez. The court commented that the rule makes no exception for sophisticated clients, as Nunez argued. The bankruptcy court then found that because the agreement that was ultimately signed in January 2011 was materially different than the June 2010 agreement, a new period of review was required, which was not given. Because the clients signed the agreement on that very day, there was no reasonable opportunity for independent review.

Under the last requirement, which requires consent by the client, the bankruptcy court found that although consent was given for the January 2011 Agreement, because a reasonable opportunity for advice must precede consent, which was not present, Nunez did not comply with the ethical rule.

We have reviewed the retainer agreement and the bankruptcy court's findings. The bankruptcy court did not commit clear error in making the determination that the Rule 3-300 warnings were not provided by Nunez to all the signers of the January 2011 retainer agreement. Among other things, the actual conflict of interest in representing both the transferor and the transferee is blatant. The terms could have never been fair and reasonable to all of Nunez's clients and on this basis alone Nunez did not comply with the Rule 3-300 warnings. Therefore, the bankruptcy court properly determined that Nunez's lien was

invalid under Rule 3-300.[9]  _Fletcher_, 33 Cal.4th at 66.

### 3.   Equitable Lien

Nunez also argues that the bankruptcy court erred in not imposing an equitable lien on the Transferred Lots to protect his claim for attorney's fees.

We disagree.  This equitable remedy must be considered under California law.  _See Wilkins v. Oken_, 321 P.2d 876, 879 (Cal. Ct. App. 1958).  The imposition of an equitable lien is an extraordinary remedy to establish justice in a given situation.  _See Farmers Ins. Exchange v. Smith_, 71 Cal. App. 4th App. 660, 667 (1999); _see also City. of Los Angeles v. Constr. Laborers Trust Funds for S. Cal._, 137 Cal. App. 410, 415 (2006); 53 C.J.S. Liens, § 5, pp. 462-463, fns. omitted.  An equitable lien is topically based on the doctrines of estoppel, unjust enrichment, or the equitable maxim that equity will deem as done that which ought to be done.  _See Farmers Ins. Exchange v. Zerin_, 53 Cal. App. 4th 445, 453 (1997); _Constr. Laborers Trust Funds For S. Cal._, 137 Cal. App. at 416.

Although we question whether an equitable lien is available as a remedy to an attorney whose retainer agreement did not create a valid charging lien, _see Wilkins v. Oken_, 157 Cal. App. 2d, 603 (1958), we acknowledge that there is no California case that establishes such a bright line rule.  However, we need not establish such a rule in this case.  Consistent with the policy

---

[9] Although the lien is invalid for non-compliance with Rule 3-300, it does not follow that the underlying contractual provisions of the retainer agreement are also invalid.  _See Shopoff & Cavallo v. Lyon LLP_, 167 Cal. App. 4th 1489, 1523 (2000).

-16-

of Rule 3-300, we find that under these facts Nunez is not entitled to an equitable lien. The basis of Nunez's representation and its adverse impact on his clients required him to comply with the ethical provisions of Rule 3-300, which he did not do. Nunez's non-compliance with Rule 3-300 rendered him unsecured. Nunez cannot now argue under an equitable theory that he is entitled to different treatment. Because the imposition of an equitable lien is based upon providing justice in a given situation, imposing an equitable lien in favor of an attorney who has failed to comply with the Code of Professional Conduct would be improper. See Farmers Ins. Exchange v. Smith, 71 Cal. App. 4th App. at 667.

We affirm the bankruptcy court's decision that Nunez has no right to an equitable lien.

### 4. Attorney's Fee Award

After properly determining that Nunez's claim was unsecured, the bankruptcy court adjudicated the amount of Nunez's unsecured claim for attorney's fees. In doing so, the record indicates that the court adopted the Trustee's methodology in calculating the fees. The bankruptcy court did not abuse its discretion in determining the reasonableness of Nunez's fees.

Section 502(b)(4) provides that a prepetition claim for services performed by an attorney or insider of the debtor shall be disallowed to the extent the claim exceeds the reasonable value of the services provided. Thus, "the excess amount of the claim beyond such reasonable value fixed by the court is simply disallowed and may not, therefore, share in the distribution of

-17-

the debtor's assets." 4 Collier on Bankruptcy ¶ 502.03[5][c] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2009). The reasonableness of attorney's fees under section 502(b)(4) is a question of federal law. Schoenmann v. Bach Constr., Inc. (In re Segovia), 387 B.R. 773, 779 (Bankr. N.D. Cal. 2008), aff'd, 2008 WL 8462967, at *6 (9th Cir. BAP Oct.22, 2008); In re W. Real Estate Fund, 922 F.2d at 597. As such, Nunez's claim for attorney's fees and costs may be allowed only to the extent it is reasonable as determined under federal law. Landsing Diversified Props.-II v. First Nat'l Bank & Trust Co. of Tulsa (In re W. Real Estate Fund, Inc.), 922 F.2d 592, 597 (10th Cir. 1991). The bankruptcy court correctly applied this law.

Nunez's total claim for attorney fees and costs was in the amount of $88,501.81. The bankruptcy court first properly disallowed all fees after the Petition Date in the amount of $30,824.27. The record indicates that Nunez was not employed by the estate. Because an attorney can only be paid by the estate for post-petition services if employed by the trustee with court approval, §§ 327-330; Lamie v. United States Tr., 540 U.S. 526 (2004), the bankruptcy court properly determined that Nunez was not entitled to post-petition fees.

The bankruptcy court then deducted $15,000 for the work previously done for Robert because there was no benefit to the Debtor. It was not clear error for the bankruptcy court to deduct fees that were unrelated to the representation of the debtor. Finally, since Debtor was one of five represented clients, with all of the clients' fees and expenses included in

the claim, the court assigned 20 percent (1/5) of the remaining balance of the claim to the Debtor, leaving $8,535.38 as a general unsecured claim. We conclude this factual finding was not clearly erroneous.

## VI. CONCLUSION

For the reasons stated above, we AFFIRM.